## Mary L. Alexander, Appellee, v. Bankers Union of Chicago, Appellant.

### Gen. No. 19,802.

1. INSURANCE, § 749*—*when reinsurance contract by a benefit society is ultra vires and void.* A benefit society has no power or authority to enter into a reinsurance contract assuming and agreeing to pay benefits contracted to be paid by another society, and where it enters into such a contract the contract is *ultra vires* and void, and the society is not estopped from raising such a defense

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

for the reason that it had received all premiums and dues from the member up to the time of his death.

2. INSURANCE, § 749*—*power of benefit societies to insure applicants beyond age of sixty years.* A benefit society is without power to admit to membership and insure an applicant who is beyond the age of sixty years because of the statutory prohibition contained in Section 7 of the Act relating to Fraternal Beneficiary Societies, Hurd's R. S. 1912, ch. 73, § 264, J. & A. ¶ 6653.

3. CORPORATIONS, § 325*—*extent of powers.* A corporation has only such powers as are expressly or impliedly conferred on it by statute.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C, MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed July 14, 1914.

**Statement by the Court.** This is an appeal from a judgment of $1,100, rendered in an action of the first class by the Municipal Court of Chicago, January 30, 1913, in favor of Mary L. Alexander, plaintiff, against Bankers Union of Chicago, an Illinois corporation, defendant. The case was tried before the court without a jury, the court finding the issues against the defendant and assessing plaintiff's damages at the sum of $1,100.

Plaintiff's claim, as stated in her statement of claim filed August 11, 1911, was for said sum of $1,100, alleged to be due her as wife and beneficiary of Dr. Lawrence Alexander, who died November 6, 1910, upon certificate No. 6050, issued April 12, 1899, by Royal Fraternal Union, a Missouri corporation, which certificate was "accepted by the Bankers Union of Chicago, an Illinois corporation, under its contract of reinsurance with said Royal Fraternal Union," and upon an instrument in writing, called a "re-insurance contract," executed by said Bankers Union of Chicago, dated April 28, 1909, and delivered to Dr. Alexander

---

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

in his lifetime.  Both the beneficiary certificate, dated April 12, 1899, and said instrument in writing, dated April 28, 1909, were attached to said statement of claim and made a part thereof.  The certificate was in the usual form issued by Royal Fraternal Union, and certified, *inter alia,* that Lawrence Alexander had been accepted as a beneficiary member of the Order; that he was entitled to certain enumerated benefits to be paid from the benefit reserve fund; that in case of his death and upon the receipt of satisfactory proof thereof there should be paid to Mary L. Alexander, his wife, if surviving, the sum of $2,000, providing the certificate had continued in full force and effect for twenty years; and that in case of his death occurring after two years from the delivery of the certificate and within three years there should be paid to the beneficiary ten per cent. of said $2,000; after three years fifteen per cent.; after four years twenty per cent.; after five years twenty-five per cent.; after ten years fifty per cent.; after eleven years fifty-five per cent.; after twelve years sixty per cent., etc.  Dr. Alexander died more than eleven years, but less than twelve years, after the delivery of said certificate, leaving him surviving said Mary L. Alexander, plaintiff.  It was provided in the certificate that the same was issued subject to the constitution and by-laws of the Order then in force or thereafter enacted.  The so-called "re-insurance contract," dated April 28, 1909, was signed by the supreme president and countersigned by the policy writer of the Bankers Union of Chicago, and states that that society "hereby insures and accepts into membership Lawrence Alexander, under certificate No. 6050, issued to him by the Royal Fraternal Union, and agrees to pay all benefits stated in said certificate according to its terms and conditions, subject to the provisions of the constitution and by-laws of the Royal Fraternal Union in force at this date, April 28, 1909.  *  *  *  This re-insurance contract shall not be valid until countersigned by our authorized policy writer."

In its affidavit of merits the defendant set up as defenses: (1) That the supposed contract of April 28, 1909, purports to assume and agree to pay benefits stipulated to be paid by another society, which contract the defendant, as a fraternal benefit society organized under the laws of Illinois, had no power to make or perform; (2) that at the time the supposed contract was signed Dr. Alexander was over sixty years of age and the defendant was without power to enter into the same; (3) that at that time Dr. Alexander did not submit to a medical examination and, hence, the defendant was without power to make the supposed contract; (4) that, in addition to the above defenses, the defendant has a good defense on the merits to plaintiff's demand in excess of $236, in that it is provided by the by-laws of the Royal Fraternal Union, in force April 28, 1909, that death benefits shall be paid from the benefit fund, and that if said fund be not sufficient to pay all approved claims, the same shall be paid pro rata and shall be accepted by claimants in full satisfaction of their demands, and that at the time of the death of Dr. Alexander said benefit fund did not exceed the sum of $236; that before the commencement of this suit defendant offered to pay plaintiff the sum of $236, which plaintiff refused to accept for the sole reason that the amount was not large enough, and plaintiff thereby waived a legal tender thereof.

It appears from the bill of exceptions that the parties stipulated as to certain facts, and that four letters offered by plaintiff were introduced, which was all the evidence considered by the court.

It was stipulated and agreed, substantially, that on April 12, 1899, the Royal Fraternal Union executed and delivered to Dr. Alexander the benefit certificate No. 6050, above mentioned; that on April 28, 1909, the defendant, Bankers Union of Chicago, executed and delivered to Dr. Alexander the so-called reinsurance contract above mentioned; that on said date said de-

fendant was, and has been at all times since, a fraternal beneficiary society organized under Illinois laws (viz., the act of June 22, 1893, as amended); that Dr. Alexander died on November 6, 1910; that from April 28, 1909, up to the time of his death all premiums and dues, contemplated or required to be paid by the terms of said reinsurance contract, were paid to the defendant or the payment thereof waived by the defendant; that Dr. Alexander at no time made or executed any application for membership in the defendant society; that he at no time submitted to any medical examination for admission into the defendant society; that when the so-called reinsurance contract was executed and delivered to him he was over sixty-six years of age; that the by-laws of the Royal Fraternal Union, in force April 28, 1909, provided that death benefits should be paid from the benefit fund, and that if the benefit fund was not sufficient to pay all the approved claims they should then be paid pro rata and should be accepted by the claimants in full satisfaction of their demands; that on the day of Dr. Alexander's death the benefit fund was not sufficient to pay all claims then approved and did not exceed the sum of $236; that before the commencement of this suit defendant offered to pay plaintiff the said sum of $236, which plaintiff refused to accept for the sole reason that the amount was not large enough.

One of the letters introduced in evidence was from the defendant to Dr. Alexander, dated April 28, 1909, in which it was stated: "We endorse the enclosed letter of the Royal Fraternal Union and heartily welcome you as a member of the Bankers Union. We agree to pay all benefits stated in your certificate as long as you keep it in force. * * * Please pin our reinsurance contract to your certificate. This is all that is necessary for you to do. We congratulate you on this beneficial change," etc. The enclosed letter was also addressed to Dr. Alexander, and it was

therein stated: "On account of the fact that the 'life' membership of the Royal Fraternal Union has become very small,   *   *   *   the supreme council unanimously voted to transfer all its members holding 'life' certificates   *   *   *   to the Bankers Union.   *   *   * Your certificate has been reinsured by the Bankers Union, who will pay all benefits stated in your certificate, exactly according to its terms and conditions, as long as you keep it in force.   *   *   *   Please pin the enclosed reinsurance contract on your certificate and pay your monthly dues in the future to the Bankers Union instead of to the Royal Fraternal Union. This is all you are required to do. We congratulate you on this change," etc. The other two letters were from the Bankers Union, addressed to an attorney for plaintiff and written after the death of Dr. Alexander.

JOHN W. BURDETTE, for appellant.

DUNCOMBE & BEHAN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Several grounds for a reversal of the judgment are here urged by counsel for the defendant. We shall consider two. They are: That the defendant, as a fraternal beneficiary society organized under the Act of June 22, 1893, as amended, relating to such societies (Hurd's St. 1912, ch. 73, secs. 258-272, J. & A. ¶¶ 6646-6662) was without power or authority to make or perform the so-called "reinsurance contract," dated April 28, 1909, (1) because said act does not confer authority upon such society to assume and agree to pay benefits stipulated to be paid by another society; and (2) because at the date of said contract Dr. Alexander was over sixty years of age, and hence, the contract was void and plaintiff cannot recover.

By the terms of said contract of April 28, 1909, it is provided that the defendant Society, "hereby insures and accepts into membership Lawrence Alexander, under certificate No. 6050, issued to him by the Royal Fraternal Union, and agrees to pay all benefits stated in said certificate according to its terms and conditions, subject to the provisions of the constitution and by-laws of the Royal Fraternal Union in force at this date, April 28, 1909." By section 1 of the Act in question it is in part provided:

"A fraternal beneficiary society is hereby declared to be a corporation, society or association formed, organized or carried on for the sole benefit of its members and their beneficiaries and not for profit. Each society  *  *  *  may make provisions for the payment of benefits in case of disability and death, or of either, resulting from either disease, accident or old age of its members. Any such society, order or association may create, maintain and disburse a reserve fund in accordance with its constitution and by-laws. Such reserve fund, if any, shall represent certain prescribed accumulations or percentage, retained for the benefit of its members or their beneficiaries, and no part thereof shall be used for expenses, nor for any purpose except the payment of death and disability claims. The payment of such benefit in all cases being subject to compliance by the members with the contract rules and laws of society.  *  *  *  The funds from which the payments of such benefits shall be made  *  *  *  shall be derived from assessments or dues collected from its members.  *  *  *  All such societies shall be governed by this act, and shall be exempt from the provisions of all insurance laws in this state, and no law hereafter passed shall apply to them unless they be expressly designated therein.  *  *  *  "

By section 7 of the Act it is in part provided:

"Any ten or more persons, citizens and voters of this State, may associate themselves together for the purpose of forming a corporation under this act; for this purpose they may make, sign and acknowledge  *  *  *  a certificate of association, in which shall be

stated the name or title of the proposed society; * * *
the limits as to age of applicants for membership,
*which shall not exceed sixty years,* and that medical
examinations are required. * * * "

We have been unable to discover anywhere in the
act any provision which expressly or by implication
confers upon such a society the power or authority to
assume and agree to pay benefits contracted to be paid
by another society. Counsel for plaintiff do not con-
tend that such power is either expressly or impliedly
*conferred,* but only that it is not expressly *prohibited.*
In *National Home Building Ass'n v. Home Sav. Bank,*
181 Ill. 35, 40, it is said: "A corporation has no nat-
ural rights or capacities, such as an individual or an
ordinary partnership, and if a power is claimed for it,
the words giving the power or from which it is neces-
sarily implied must be found in the charter or it does
not exist. The law on this subject is stated by the
Supreme Court of the United States in *Central Trans-
portation Co. v. Pullman Palace Car Co.,* 139 U. S. 24,
as follows: 'The charter of a corporation, read in the
light of any general laws which are applicable, is the
measure of its powers, and the enumeration of those
powers implies the exclusion of all others not fairly
incidental.' " In *Wallace v. Madden,* 168 Ill. 356, 360,
referring to the Catholic Order of Foresters, a fra-
ternal beneficiary society, it is said: "When the order
adopted its constitution and by-laws and became or-
ganized under the statute it became subject to all the
provisions of the statute. It became clothed with such
power, and such only, as was conferred by the statute,
and any provision of its constitution or by-laws incon-
sistent with the statute, or not authorized by the stat-
ute, would be a nullity." In *Fritze v. Equitable Build-
ing & Loan Society,* 186 Ill. 183, 196, it is said: "The
rule of construction applicable to statutory provisions
is, 'that every power that is not clearly granted, is
withheld, and that any ambiguity in the terms of the

grants must operate against the corporations and in favor of the public.' * * * If the power claimed is withheld, 'it is regarded as a prohibition against the exercise of such a power.' * * * Corporations can only exercise such powers, as may be conferred by the legislative bodies creating them, either by express terms or by necessary implication. Implied powers are presumed to exist in order to enable such bodies to carry out the express powers granted and to accomplish the purpose of their creation. By an implied power is meant one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has slight or remote relation to it.'' After a careful reading of the act in question, we are of the opinion that the making of the contract of April 28, 1909, whereby the defendant Society agreed to pay all benefits according to the terms and conditions of the certificate issued to Dr. Alexander by the Royal Fraternal Union, another society organized in another State, was *ultra vires* the defendant Society. We think that the contract is contrary to the whole scope and purpose of the act under which the defendant Society was organized. In this connection reference may be made to the following cases, decided by the courts of other States: *Twiss v. Guaranty Life Ass'n,* 87 Iowa 733; *Whaley v. Bankers' Union of the World,* 39 Tex. Civ. App. 385; *Bankers' Union of the World v. Crawford,* 67 Kan. 449; *Gordon v. American Patriots,* 141 S. W. Rep. (Tex. Civ. App.) 331. Furthermore, at the time the contract of April 28, 1909, was delivered to Dr. Alexander, in which contract it was stated that the defendant Society ''hereby insures and accepts into membership Lawrence Alexander,'' he was considerably over the age of sixty years, and the defendant Society was absolutely without power to admit into membership and insure a man who was over that age, because of the statutory prohibition contained in section 7 of the Act above men-

tioned. (*Steele v. Fraternal Tribunes,* 215 Ill. 190, 194; *State v. Bankers' Union of the World,* 71 Neb. 622, 632.) Counsel for plaintiff place considerable reliance upon the case of *Williams v. Bankers' Union of Chicago,* 166 Ill. App. 495. In that case it appears that the deceased had been a member of a Nebraska fraternal benefit society, which was reorganized into an Illinois fraternal beneficiary society bearing a slightly different name, and the latter society continued the business of the former. The deceased took a medical examination on becoming a member of the Nebraska society, but was not again examined after the reorganization. It further appears from the opinion that the plea of the defendant of *ultra vires* was withdrawn before the trial and that question was not considered by the court.

It is contended by counsel for plaintiff that even though the contract be regarded as *ultra vires,* yet the defendant society is estopped from raising that defense because Dr. Alexander from the date of the contract, April 28, 1909, up to the time of his death paid all premiums and dues to the defendant Society and the Society had the full benefit of the performance of the contract on his part. The same point was made in the case of *Steele v. Fraternal Tribunes,* 215 Ill. 190, 193, and decided adversely to counsels' contention. The Court in that case said: "A contract of a corporation which is *ultra vires* in the proper sense of that term,—that is to say, outside the object of its creation, as defined by the laws of its organization, and therefore beyond the powers conferred upon it by the legislature,—is not only voidable, but wholly void and of no legal effect. * * * The contract could not be ratified by either party because it could not have been authorized by either. No performance by the parties could give the unlawful contract validity or become the foundation of any right of action upon it." In *Fritze v. Equitable Building & Loan Society,* 186

Ill. 183, 199, it is said: "The doctrine, however, that a corporation cannot avail itself of the defense of *ultra vires* when a contract has been in good faith performed by the other party and the corporation has had the full benefit of its performance, was never held to have any application where such contract is immoral or illegal or *prohibited by statute* or where its enforcement would be against public policy." See also *National Home Building Ass'n v. Home Sav. Bank*, 181 Ill. 35; *Converse v. Emerson, Talcott & Co.*, 242 Ill. 619; *Durkee v. People*, 155 Ill. 354; *United States Brewing Co. v. Dolese & Shepard Co.*, 259 Ill. 274, 278.

As appears from plaintiff's statement of claim she sought to recover the sum of $1,100 by reason of the so-called reinsurance contract of April 28, 1909, issued by the defendant Society. She filed no other claim, or count, that she was entitled to recover back from the defendant Society any moneys paid to it by Dr. Alexander from April 28, 1909, up to the time of his death, and it is not shown by the evidence what sums he did pay the defendant Society, and we, therefore, express no opinion on this question. We hold, however, that there can be no recovery on said so-called reinsurance contract, and that the trial court erred in overruling defendant's motion for a new trial and in entering the judgment, and, accordingly, the judgment of the Municipal Court will be reversed and the cause remanded.

*Reversed and remanded.*