NORTH AMERICAN UNION *v.* JOHNSON.

Opinion delivered March 1, 1920.

1.  INSURANCE—FOREIGN FRATERNAL BENEFIT SOCIETY—DOING BUSINESS IN STATE.—Where a foreign fraternal benefit society takes over the business of another society having local lodges and agents in the State and assumes certificates and deals with local agents relative to claims and continuance of business, it is doing business in the State, within the meaning of Acts 1917, page 2087, relating to service of process.

2.  INSURANCE — FOREIGN FRATERNAL BENEFIT SOCIETY — SERVICE OF PROCESS.—A foreign fraternal benefit society doing business in the State in violation of Acts 1917, page 2087, is estopped to deny that the Insurance Commissioner was its agent upon whom legal process directed against it might be served.

3.  INSURANCE—BENEFIT CERTIFICATE—LAWS GOVERNING.—Where a certificate issued by a foreign fraternal benefit society recited that the constitution, laws, rules and regulations of its society were made a part thereof, and its laws expressly provided that its contracts should be construed as Illinois contracts, the validity of such certificate must be determined by the laws of that State.

4.  CORPORATIONS—POWERS.—Corporations can exercise such powers only as may be conferred by the legislative bodies creating them, either by express terms or by necessary implication.

5.  INSURANCE — BENEFIT SOCIETIES — POWER TO MERGE.—Under the laws of Illinois a fraternal benefit society has no power to merge with another fraternal benefit society where its charter did not permit such merger, and the merger was not essential to effectuate the objects and purposes of its creation.

6.  INSURANCE—CERTIFICATE ISSUED WITHOUT MEDICAL EXAMINATION.—Under the laws of Illinois a certificate issued by a fraternal benefit society of that State without a medical examination is *ultra vires* and void, and neither party to the certificate can be estopped by any acts under it to deny its validity.

7.  INSURANCE—BENEFIT SOCIETY—VALIDITY OF CERTIFICATE.—Though an Illinois benefit society without authority formed a merger with another society doing business in this State, yet where it proceeded to deal with the individual members of the latter society and issued a certificate to plaintiff's decedent conditioned upon his acceptance thereof, the certificate became a contract of the foreign society unaffected by the merger.

8.  INSURANCE — ADOPTION OF MEDICAL EXAMINATION.—Where the Illinois statutes made void benefit certificates issued without a medical examination, but left the method of examination to the

society, a certificate issued to a member of another society adopting the medical examination made by that society is a compliance with the statute.

9.  INSURANCE—BENEFIT CERTIFICATE—FORFEITURE.—Whether an insured under a benefit certificate, in violation of its terms, used narcotic drugs to such an extent as to impair his health, so as to cause a forfeiture of his benefit certificate, *held* under the evidence to be a question for the jury.

10.  APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Where it can not ·be said as a matter of law that there is no substantial evidence to sustain the verdict, it is conclusive on appeal.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*T. E. Helm* and *Sherrill, Buchanan & Mallory,* for appellant.

1.  No proper service was had upon appellant, and the court had no jurisdiction, as it was a fraternal beneficiary society of Illinois with its office in Chicago, and it never applied for a license and was never authorized to do business in Arkansas. Acts 1917, § 17, art. 462; 59 Ark. 593, 606-7; 218 U. S. 573; 197 N. Y. 279; 139 Am. St. Rep. 879; 251 Fed. 171; 204 U. S. 8, 21-2. The attempted service upon the State Insurance Commissioner of Arkansas was invalid.

2.  The merger between appellant and the Knights & Ladies of Honor was *ultra vires* and void. Rev. Stat. of Ill., ch. 73, § 7; *Ib.,* § 9; Acts 1917, art. 462; 168 Ill. App. 328; 94 Ark. 27, 31-2; 87 *Id.* 587; 95 *Id.* 371; 96 *Id.* 602; 157 Ill. 651; 191 Ill. 40; 168 *Id.* 360; 186 *Id.* 196; 215 *Id.* 193; 187 Ill. App. 469; 141 S. W. 333; 88 *Id.* 261; 118 *Id.* 396; 81 Neb. 380. The powers conferred upon appellant are not such as would permit any implied power to reinsure members of another company.

3.  The appellant having nò power, either express or implied, to issue the contract involved can not be estopped from setting up *ultra vires.* 185 Ill. 40; 181 *Id.* 44; 186 *Id.* 199; 91 Ill. App. 547; 97 *Id.* 70; 215 Ill. 193; 187 Ill. App. 459.

4. The trial court failed to give full faith and credit to the decisions of the courts of Illinois defining the powers and liabilities of fraternal benefit societies. 185 Ill. 183, 196; 215 *Id.* 193; 187 Ill. App. 469; 237 U. S. 543; 89 Md. 631; 82 Conn. 318.

5. The trial court in failing to follow the decree of *Kenniston* v. *Fraternal Aid Union, N. Am. Union and K. & L. of Honor,* failed to give full faith and credit to the judgment of the courts of Illinois. 191 U. S. 319; 85 Va. 901; 60 Md. 93; 37 Ala. 626; Const. U. S., art. 4, § 1; 218 U. S. 1; 247 *Id.* 151; 245 *Id.* 149; 237 U. S. 545.

6. The court erred in refusing to direct a verdict. The certificate was void. The evidence is conclusive that Johnson's health was impaired by use of narcotic drugs. 129 Ark. 159; 104 *Id.* 545.

7. The court should have given special interrogatory requested by defendant. 36 Ark. 371; 12 L. R. A. (N. S.) 88; 50 *Id.* 900; 87 Kan. 719.

8. The court erred in refusing instruction 6 for defendant. 253 Ill. 462; 31 S. W. 493; 140 Fed. 978; 104 Ark. 544.

*W. H. Pemberton,* for appellee.

1. The testimony shows that defendant was *"doing business in this State."* 213 U. S. 245; 115 Ark. 272, 293; 115 *Id.* 528. Service was had upon the Insurance Commissioner and J. L. Hawkins, an agent of appellant, and a certified copy of the complaint was served upon it. 90 Ark. 48.

2. This was a proceeding *in rem* as well as *in personam,* and appellant was properly in court. The entry of appearance by counsel for appellant as to the ownership of funds garnished was full and complete for all purposes.

3. The alleged merger and *ultra vires* does not prevent a recovery in this case. 208 Mass. 411, 94 N. E. 685; 36 L. R. A. (N. S.) 597. This case is on all-fours with this. See also 131 Mass. 258; 96 Ark. 595; 74 *Id.*

377; 91 *Id.* 376; 77 *Id.* 109; 86 *Id.* 287; 82 N. W. 965; 70 Iowa 461.

4. The courts of Illinois have never passed favorably upon the contention of appellant that liability could be escaped by the plea of *ultra vires,* but if so the decisions are clearly in the teeth of the other State and U. S. decisions. 23 Ark. 523; 50 So. 248; 119 S. W. 946; 11 Cyc. 663; 32 Ark. 332; 1 Cyc. 36; 155 Ill. 617. When foreign corporations come into this State to do business they must conform to our laws. 173 Ill. 621; 182 Ill. 551.

5. The verdict of the jury and its answer to interrogatory is amply supported by the evidence and the certificate was not void. In conclusion the court had jurisdiction by service and entry of appearance and the doctrine of *ultra vires* does not appply and there is no reversible error.

*Gardner K. Oliphint, amicus curiae.*

1. The court had jurisdiction. Defendant's exceptions to the motions to quash were *en masse.* 78 Ark. 7; 105 *Id.* 157. Nor is the first motion abstracted. 81 *Id.* 327; 111 *Id.* 509. The exceptions were waived. 27 *Id.* 506; 79 *Id.* 176. Defendant entered its appearance. 140 Fed. 921; 1 *Id.* 471; 19 Okla. 115; 91 Pac. 864; 136 *Id.* 584; 95 Ark. 307. Defendant waived all objections to jurisdiction by failing to preserve its objections and exceptions and by its special appearances. 77 Ark. 416; 214 S. W. 1.

2. The alleged *ultra vires* of defendant's failure to insist upon compliance with certain of its own requirements. In the absence of proof of Johnson's age, the reinsurance was not contrary to Illinois law. This court need not consider the decisions cited in brief of appellant like 215 Ill. 190, 74 N. E. 121. The corporation, having made a contract of reinsurance and having received full consideration, can not avoid its contract by the plea of *ultra vires.* 120 Ill. 128; 11 N. E. 331; 212 Ill. 532;

74 N. E. 121; 79 *Id.* 133; 102 *Id.* 753; 187 Ill. App. 469; 208 Mass. 411; 94 N. E. 685.

WOOD, J. The Knights and Ladies of Honor was a fraternal insurance corporation organized under the laws of the State of Indiana and licensed to do business in Arkansas. On the 26th of April, 1916, it issued to Richard T. Johnson its certificate or policy of insurance for $2,000 in which Bonnie B. Johnson, the appellee, was named as the beneficiary.

On the 24th of August, 1916, the Knights and Ladies of Honor attempted to merge with the North American Union, the appellant. The appellant is a fraternal insurance society of the State of Illinois. It has never been licensed to do business in this State. After this attempted merger, the appellant on the 25th of October, 1916, issued its "certificate of membership" to Richard T. Johnson, which among other things provides:

"That, under and by virtue of merger and consolidation, made and entered into by and between the North American Union and the Supreme Lodge, Knights and Ladies of Honor, which became of full force and effect on the 24th day of August, 1916, and which said agreement, and all the terms and conditions thereof, together with the constitution, laws, rules, and regulations of the said North American Union, are hereby made a part thereof; that Richard T. Johnson, holder of benefit certificate No. 15422, issued by the said Supreme Lodge, Knights and Ladies of Honor, is entitled to the privileges of membership in the said North American Union, as acquired under, to the extent of, and according to the terms and conditions of said agreement of merger and consolidation, and the laws, rules, and regulations of the said North American Union.

"The North American Union hereby assumes and agrees to pay to the lawful beneficiary or beneficiaries of said member, in the event of the death thereof, while in good standing, and the furnishing of satisfactory proof as to the fact and cause of the death of said member, the

amount of insurance in force and effect, and payable upon the death of said member, according to the provisions of the said benefit certificate and the constitution, laws, rules, and regulations of the said Supreme Lodge, Knights and Ladies of Honor, in force and effect at the time of the execution of said agreement, provided that said member has made all payments in the time, manner and amount required and has complied with the laws, rules, and regulations of the said North American Union now in force, or thereafter enacted or adopted and the terms and conditions of the aforesaid agreement.

"This certificate shall be null and void, unless said member, at the time of the issuing thereof, is in good standing, etc."

Richard Johnson died on the 31st of October, 1917.

The appellee instituted this action against the appellant on the above certificate, alleging that the insured at the time of his death was in good standing with the Knights and Ladies of Honor and with appellant; that the appellant was a foreign corporation and doing business in this State, but had not complied with the laws of Arkansas by appointing an agent upon whom the service of process could be had. She further alleged that one J. L. Hawkins, the garnishee, was the collector and secretary of the appellant and had in his hands money belonging to the appellant. She prayed for a writ of garnishment against him, and that he be enjoined from paying over the funds in his hands to appellant and that she have judgment against the appellant for the amount of the policy.

Summons was issued and was returned "duly served by delivering a true copy thereof to J. L. Hawkins, agent for the within named North American Union and a copy to Bruce Bullion, State Insurance Commissioner, as therein commanded."

The appellant entered its appearance specifically for the supreme purpose of moving to quash service alleging that J. L. Hawkins was not its agent and further alleging that appellant had never engaged in business in the State of Arkansas and had never consented to having summons

served upon the Insurance Commissioner. The court overruled the motion to quash the service. The appellant then filed its answer but without waiving its plea of insufficient service.

In its answer the appellant set up three defenses. First, that the certificate issued by it was void for the reason that the attempted merger between the appellant and the Knights and Ladies of Honor was in violation of law and *ultra vires.* Second, that no application for membership in appellant had ever been made by Richard T. Johnson and no medical examination of him was ever made, and that he, therefore, never became a member of appellant in the manner and form prescribed by the State of Illinois and the laws of appellant in such cases made and provided. Third, that Richard T. Johnson had violated the laws of appellant in that he used heroin and other narcotic drugs to such an extent as to impair his health, which was expressly prohibited by the constitution and laws of appellant, and that in doing so he forfeited all of his rights in the certificate.

The issues of fact were sent to the jury under instructions. The trial resulted in a verdict and judgment in favor of appellee. From that judgment is this appeal.

*First.* Appellant contends that no service was had upon it and that the trial court was, therefore, without jurisdiction.

The supreme secretary of the appellant testified that the appellant was an Illinois corporation; that J. L. Hawkins, the secretary and collector of Mimosa Lodge of the Knights and Ladies of Honor, held no position with appellant and received no compensation directly or indirectly from appellant; that the local councils of appellant elected their own officers, including secretary and collector or agent, for the collection of dues and assessments of the members of the local council; that the supreme council had nothing to do with whom the local council should appoint to serve as such officer or agent. The supreme council merely received such money as was sent to it by the local treasurer or local officers. The keeping

and maintaining of the membership in good standing by the supreme council is a matter entirely within the control of the local council. He further testified, that the appellant had never done any business in this State.

James L. Hawkins testified that he was the secretary and collector of Mimosa Lodge of the Knights and Ladies of Honor, having been elected to that office by the local lodge prior to the merger with the appellant. He began collecting for the appellant after the merger. He received instructions from the appellant only in a general way. It instructed witness to collect and send the money on two different occasions in a circular letter sent out by the secretary. When collections were made from members of the local lodge, witness gave them a receipt furnished by the supreme secretary of the appellant. The appellant finally refused to send receipts, possibly in June, 1918. This was after the garnishment was served upon the witness. Witness had had some correspondence with the different officers of the appellant.

The correspondence was exhibited. It shows that the witness notified the appellant of the death of members, and received from it blank forms for use in submitting proofs of deaths to the appellant with instructions when same were completed to forward the same to appellant. Also inclosed blanks for suspension notice and certificates of good health and applications for reinstatement, stating that it was the desire of the appellant to have these blanks put in use by all former councils of the Knights and Ladies of Honor and instructing witness how and when to proceed in case of suspensions and reinstatement.

Witness further testified that he forwarded to the appellant on an average of about $275 a month from the time of the merger until the writ of garnishment was served on him. Witness reinstated five or six members according to the directions of appellant, and witness reissued a policy to one of the members on one of its forms. The appellant paid one death claim and had others under consideration. Witness at appellant's instance had pro-

duced proofs of death and under appellant's instructions had collected the war tax from the members of the local lodge of Knights and Ladies of Honor. The appellant sent witness publications for distribution to members of the local lodge, and in a general way appellant urged witness to go ahead, look after the membership, keep up the dues and send a draft to the general office. Appellant urged witness to do what he could to keep the local lodge together.

I *North American Union* v. *Oliphant,* 141 Ark. 346, we said: "We think taking over the membership of the Knights and Ladies of Honor, adopting the local organization of this order as its local organization, attaching riders to the policies of the members of the Knights and Ladies of Honor, thereby assuming liabilities under the policies, levying and collecting premiums and dues on the policies, paying losses and directing its representatives to solicit insurance, constitute a doing of business in the State under the statute."

In *Sovereign Camp, Woodmen of the World v. Newsom, ante* p. 132, we held that where a fraternal organization has a central or supreme governing body with local lodges through which the membership is recruited and by the officers of which assessments are collected and remitted, that the local organization and its officers to whom are committed these duties are to be considered the agents of the governing body; that this agency is subject to the ordinary rules applicable to agencies of the same general character in the business of ordinary life insurance; that the officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge for the purpose of paying insurance certificates of deceased members and of collecting and forwarding to the supreme lodge such assessments is an agent of the supreme lodge in the performance of these duties.

It follows from the above decisions that the appellant was doing business in this State and is estopped from denying that the Commissioner of Insurance was

its agent upon whom legal process directed against appellant might be served. The court did not err, therefore, in overruling appellant's motion to quash the service. The service of summons upon the Insurance Commissioner, under the facts disclosed by this record, was sufficient to give the trial court jurisdiction over the appellant. *North American Union* v. *Oliphint, supra,* and cases there cited.

*Second.* The appellant contends that the merger between appellant and Knights and Ladies of Honor under which the certificate was issued on which this suit was based, was *ultra vires* and void, and that the performance of the alleged contract of insurance on the part of the assured Johnson and the conduct of its officers and agents in accepting the benefits of such performance, did not estop appellant from setting up the defense of *ultra vires,* and from denying liability.

The certificate of insurance issued by appellant upon which this suit is based, if valid at all, is an Illinois contract, and governed by the laws of that State, which is the domicile of the appellant. The certificate itself recites that the "constitution, laws, rules, and regulations of the said North American Union are hereby made a part thereof."

Section 7 of the laws of appellant provide that the contract of membership in the order shall in all cases be construed according to the laws of the State of Illinois.

The laws of the order also form part of the contract of insurance. *Sovereign Camp, Woodmen of the World* v. *Newsom, supra,* and cases there cited.

In *Royal Arcanum* v. *Green,* 237 U. S. 532, it is held that "The rights of members of a corporation of a fraternal or beneficiary character have their source in the constitution and by-laws of the corporation and can only be determined by resort thereto and such constitution and by-laws must necessarily be construed by the laws of the State of its incorporation."

The appellant is a fraternal benefit society organized under the insurance act of 1893 of Illinois, ap-

proved June 22, 1893. Laws of Ill. 1893, p. 130. Neither does that act, nor the charter powers conferred upon appellant under it, authorize fraternal societies to consolidate or merge. Such power is not necessary to enable these fraternal societies or corporations to effectuate the objects and purposes of their creation. Therefore, they do not have such power by implication.

"Corporations can only exercise such power as may be conferred by the legislative bodies creating them, either in express terms or by necessary implication." *Fritze* v. *Bldg. Loan Assn.*, 180 Ill. 183-96; *American Loan & Trust Co.* v. *Minn. & N. W. Ry. Co.*, 157 Ill. 641; *Steele* v. *Fraternal Tribunes*, 215 Ill. 190-3; *Wallace* v. *Madden*, 168 Ill. 356-60; *Nat. Home Bldg. Assn.* v. *Home Savings Bank*, 181 Ill. 35-40; *Alexander* v. *Bankers Union*, 187 Ill. App. 469.

The above is also a well established doctrine of our own court. *Gregg* v. *L. R. C. of C.*, 120 Ark. 426-32; *Rachels* v. *Stecher Cooperage Works*, 95 Ark. 612; also *Simmons Nat. Bank* v. *Dilley Foundry Co.*, 95 Ark. 368; *Richeson* v. *Nat. Bank of Mena*, 96 Ark. 594; *Ozan Lumber Co.* v. *Biddie*, 87 Ark. 587; *Ark. Stave Co.* v. *State*, 94 Ark. 27.

Therefore, the merger of appellant with the Knights and Ladies of Honor was *ultra vires* and void.

The law of Illinois, under which appellant was organized, provides that the certificate of association upon which the Insurance Superintendent is authorized to issue a charter to fraternal insurance societies shall state among other things that "medical examinations are required."

The charter of appellant provides that "applicants for membership will be required to undergo a strict medical examination before being admitted to membership in this corporation."

Therefore, under the laws of Illinois, as well as the laws of appellant, medical examinations are required as a prerequisite to membership in fraternal benefit societies. A certificate issued without such medical examina-

tion is an *ultra vires* act upon the part of the corporation which renders such certificate not only voidable but wholly void and of no legal effect. Hence, neither party to such an alleged contract could be estopped by any acts done under it from showing that the purported contract was in violation of the laws of the State. *Wallace v. Madden, supra; Merc. Trust Co. v. Castor*, 273 Ill. 332-43; *Steele v. Fraternal Tribunes, supra; Theodore R. Converse v. Emerson & Co.*, 242 Ill. 619-27; *Alexander v. Bankers Union, supra*, where the above and other Illinois cases are cited.

As holding contrary to the above doctrine, learned counsel for appellee cite from other jurisdictions the following cases: *Timberlake et al. v. Order of the Golden Cross of the World*, 208 Mass. 411; *Cathcart v. Equitable Mutual Life Assn.*, 111 Iowa 471; *Denver Fire Ins. Co. v. McClellard*, 9 Pac. 771.

He also cites the following cases of this court: *Ark. Lumber Co. v. Posey*, 74 Ark. 377; *Minn. Fire & Marine Co. v. Norman.* 74 Ark. 190; *Ark. & La. Ry. Co. v. Stroude*, 77 Ark. 109; *Western Dev. & Invest. Co. v. Caplinger*, 86 Ark. 287; *Richeson v. Bank of Mena*, 86 Ark. 595.

It would unduly extend this opinion to review each of the above cases, but it is believed that a critical examination of them with reference to the facts will discover that they do not contravene the doctrine announced above by the Supreme Court of Illinois. The cases mentioned upon which counsel for appellee relies merely announce and adhere to the well-established rule that when a corporation is proceeding to exercise powers within the scope of the general authority conferred upon it by its charter, or within the general purposes of its creation, and not in violation of the statute under which it was organized, but nevertheless, in a manner improper, irregular, and unauthorized by the laws of the corporation, it will not be allowed to set up the defense of *ultra vires* when sued on contracts which have been performed by the other party and from which it has received the benefit.

But there is a clear distinction between such contracts and those which are entirely foreign to the purposes of the corporation as expressed in its articles of association and charter and which are in positive violation of the statutes under which the corporation is created. Of the latter all persons dealing with the corporation are bound to take notice. See *Timberlake* v. *Golden Cross, supra; Ullman* v. *Golden Cross,* 107 N. E. 960-2.

However, even if we are mistaken in our interpretation of the above cases, let it be remembered that, whatever may be the law in other jurisdictions, the laws of Illinois, as we have seen, must govern in determining the issue as to the liability of the appellant on the certificate upon which this action is based. We are dealing with a contract of fraternal insurance, nothing else. The law of Illinois, as we have shown, requires a medical examination as a condition precedent to a contract of insurance with a fraternal benefit society.

But because the merger of the Knights and Ladies of Honor with appellant was *ultra vires* and void and because the laws of Illinois require a medical examination as a prerequisite to membership in a fraternal benefit society, does it necessarily follow that the certificate or policy of insurance issued by the appellant to Richard T. Johnson is also void and that appellant is not liable thereon? Let us see.

The terms and conditions of the merger are not disclosed in the certificate. Appellant, after the merger, did not treat the members of the Knights and Ladies or Honor as if they had been transferred in a body to appellant by the attempted merger and as if the merger, *ipso facto,* completed the contract of insurance between them and appellant. On the contrary, appellant proceeded to deal with the individual members of the Knights and Ladies of Honor and to propose membership and a contract of insurance with appellant as set forth in the certificate under consideration. The certificate itself and the correspondence concerning it show that the contract

of insurance did not become complete until the certificate was "received, accepted and signed" by Johnson.

The merger agreement being *ultra vires* and therefore void, both appellant and Johnson must be held to have known that the inclusion of that agreement in the contract between them was a vain and idle thing, as no rights could be built upon it. They must be held to have intended that the real and only consideration to appellant was that Johnson should be in good standing and make "all payments required and comply with the laws, rules, and regulations" of appellant; that the consideration to Johnson in return was that appellant should pay to his beneficiary the amount named in the benefit certificate issued to him by the Knights and Ladies of Honor. These were legal and valuable considerations and carried mutual and binding obligations upon which the minds of the parties met. It is manifest that the parties did not intend that the terms of the merger agreement should constitute the consideration of the contract. This *ultra vires* merger can and must, therefore, be eliminated, and effect be given to the contract without it, as the parties intended. *Fort Smith Light & Traction Co.* v. *Kelly,* 94 Ark. 461; *Hanauer* v. *Gray,* 25 Ark. 350; *St. L., I. M. & S. Ry. Co.* v. *Matthews,* 64 Ark. 398-405. See also 6 R. C. L., p. 858, secs. 246-248; *Ragsdale* v. *Nage,* 106 Cal. 332-36, 13 C. J., sec. 525-26. The contract when thus construed was one of the very kind that appellant was authorized to make under the statute and by the express terms of its charter, provided a medical examination of Johnson was required. Was such examination required?

While under the statute of Illinois "medical examination is required," the statute does not prescribe the methods for conducting such examination. The *how, when* and *where* of it is left entirely to the fraternal society. The by-laws of appellant provide that "an applicant shall not be entitled to benefits until he has  *  *  * passed a successful medical examination and has been approved by the supreme medical director and obligated." The benefit certificate of Johnson issued by the

Knights and Ladies of Honor shows that one of the conditions upon which it was issued was "that the answers to all questions propounded in the medical examiner's certificate are true." This benefit certificate was in evidence.

The certificate upon which this action is predicated expressly refers to the benefit certificate held by Johnson in the Knights and Ladies of Honor and assumes to pay the amount of that certificate "according to provisions of the said benefit certificate and the constitution, laws, rules, and regulations of the Supreme Lodge of the Knights and Ladies of Honor," etc.

The by-laws of appellant provide that the applicant must sign the application and medical examination blank prescribed by the laws of appellant; "that membership in the order shall only be permitted such persons as have complied with all the laws, rules, and regulations of the order pertaining to admission of members;" that "no subordinate body of the order nor any of its officers or members nor any officer or member of the supreme council shall have any power or authority for or on behalf of the North American Union to waive, modify, or annul any provision of the constitution or laws of the order;" that "no custom or practice upon their part in derogation of the provisions or requirements shall constitute a waiver;" that this provision "shall be binding on the society and each and every member thereof and all beneficiaries of members."

The supreme secretary of appellant testified that Richard T. Johnson had never made application for membership in appellant; that no medical examination of him was ever made.

Now none of the provisions of appellant's by-laws above mentioned were statutory requirements except the one relating to medical examination. The facts of this record as shown by the recitals of the benefit certificate held by Johnson in the Knights and Ladies of Honor and the recitals of the certificate upon which this action was based show that there was a medical examination of Johnson as a condition precedent to his membership in the Knights and Ladies of Honor, and that appellant ac-

cepted this examination as a sufficient compliance with
the statute and the by-laws of appellant requiring a med-
ical examination.  In other words, the conduct of appel-
lant under all the circumstances in evidence was tanta-
mount to an adoption by it of the medical examination
that had been made by the Knights and Ladies of Honor.

In the above respect the facts are somewhat similar
to the case of *Williams* v. *Bankers Union*, 166 Ill. App. 495.
In that case Williams was insured in the Bankers Union
of the World, a Nebraska society, and a certificate of re-
insurance was issued to him by the Bankers Union of Chi-
cago, an Illinois corporation, on which his beneficiary in-
stituted suit against the Illinois corporation.  The court in
its opinion said:  "We are of the opinion that the evi-
dence tended to show a reorganization of the Nebraska
society and was in effect a mere continuation of the busi-
ness of the Nebraska society by the Illinois society *and
the medical examination taken by the insured in becom-
ing a member thereof was, under all the circumstances in
evidence and so treated by the appellant, a compliance
with the statute of this State in respect to the member-
ship of the insured in the appellant society.*  It clearly
appears that the appellant, with knowledge of said com-
munications, accepted, considered and dealt with the in-
sured as a member and to say that it did not so consider
the insured would be to confess being a party to a fraud
practiced on all members so secured."

The act referred to above was the same as that under
which the appellant here was organized.

In the absence of a statute prescribing the method
for a medical examination, it is certainly not an *ultra
vires* act for one fraternal benefit society to accept as its
own the medical examination made by another fraternal
society and it could not be said in such case that no med-
ical examination was required.  Even though appellant
in accepting Johnson as a member without application
and recommendation as required by its by-laws and upon
the medical examination made by the Knights and Ladies
of Honor was acting contrary to its own constitution and

laws, such acts were not *ultra vires.* The supreme power of appellant that made these laws could change them, and a compliance therewith could be waived through the conduct of duly authorized agents acting within the scope of their authority. See *Timberlake* v. *Golden Cross, supra; Sovereign Camp Woodmen of the World* v. *Newsom, supra,* and cases there cited.

The appellant here dealt directly with Johnson through its general manager who in a letter enclosed the certificate requesting Johnson to sign and attach thereto his benefit certificate in the Knights and Ladies of Honor with the declaration that ''in order to keep his membership and insurance in force'' it would be ''only necessary to make payments promptly and in the same manner as heretofore.'' On these conditions Johnson accepted the contract on October 26, 1916, and continued to pay the assessments or premiums due thereon until the time of his death, October 31, 1917. All of which appellant received.

The case of *C. W. Kenniston et al.* v. *Fraternal Aid Union et al.* has been brought into this record by agreement. The facts concerning that case so far as it may be necessary to state them here, are substantially as follows:

After the merger of the Knights and Ladies of Honor with appellant, the latter on the 20th of November, 1916, through some of its supreme officers, entered into negotiations with the Fraternal Aid Union of Kansas, under which they agreed upon a merger. On the 1st of August, 1917, C. W. Kenniston *et al.,* former members of appellant, filed a bill of complaint in chancery in the circuit court of Cook County against the Fraternal Aid Union and appellant. Afterward by amendment to their complaint the Knights and Ladies of Honor were also made parties defendant. The object of the suit was to test the validity of the merger of appellant with the Fraternal Aid Union and with the Knights and Ladies of Honor.

The Knights and Ladies of Honor answered the complaint and also filed its cross bill, setting up among other

things that after the merger agreement with appellant the members of the Knights and Ladies of Honor had paid their assessments and dues to appellant, and that its supreme lodge had turned over all of its assets to appellant; that on the 20th of November, appellant entered into a contract of merger with the Fraternal Aid Union of Kansas, and that after such merger agreement the Knights and Ladies of Honor had turned over to the Fraternal Aid Union all of its assets, and that its members since that date had paid their dues to the Fraternal Aid Union; that a majority of the members of the Knights and Ladies of Honor since the merger of appellant with the Fraternal Aid Union had become members of that Order. They alleged that the merger between appellant and the Knights and Ladies of Honor was *ultra vires* and void. They prayed that same be so declared and that all the assets to which the Knights and Ladies of Honor and its members were entitled should be held by the Fraternal Aid Union, and that an accounting be had between the appellant the Fraternal Aid Union, and the Knights and Ladies of Honor, and that they should "have such other and further relief in the premises as the nature of the case should require.

The parties defendant to the original complaint answered same and also the defendants in the cross bill answered the same, and upon the issues thus joined the cause was heard and a decree was entered by consent.

Among other recitals in the decree are the following: "It being the intention hereof that all members of the North American Union and its affiliated societies who have remained with the Fraternal Aid Union shall be given an opportunity to elect whether they will remain with the Fraternal Aid Union or to return to the North American Union after they have been informed of the entry of this decree. * * * Any and all assessments, premiums and contributions paid for the month of October, 1917, and any month succeeding by members of the subordinate lodges of the Supreme Lodge of the Knights and Ladies of Honor located outside of the city of St. Louis

* * * who may elect to remain members of the North American Union shall belong to the North American Union.''

The facts of that record and other recitals of the decree show that former members of the Knights and Ladies of Honor who after the merger with appellant, had accepted its certificates of insurance, could by the terms of that decree elect ''to remain members of the North American Union.''

The decree in that case, after declaring the mergers between the appellant and the Fraternal Aid Union and the Knights and Ladies of Honor void, proceeded to declare the status of the former members of the Knights and Ladies of Honor with reference to the Fraternal Aid Union and the appellant and allowed them ''to remain'' with whichever organization they desired. That decree declared them already members of the organization which had issued to them benefit certificates upon their election to so remain with such organization. This decree did not require a formal application and observance of the by-laws of appellants as upon original application in order to become a member of appellant. But the decree validated unconditionally the benefit certificate that had been issued by appellant to all the former members of the Knights and Ladies of Honor who elected to remain with appellant and retain its policy or benefit certificate. Johnson was one of those members.

The circuit court of Illinois, although an inferior court, was nevertheless a court of general jurisdiction. It had jurisdiction of the different organizations, and through them, the members thereof, and also of the subject-matter of the mergers and their effect upon the societies and their members. The decree of that court was binding upon all parties to it, until reversed and set aside by the appellate tribunal.

Appellant did not appeal from that decree, but on the contrary consented thereto.

We, therefore, conclude that, under the laws of Illinois as expressed in her statute and declared by her

courts, Johnson at the time of his death was a member of appellant and a rightful holder of its policy of insurance, and that the beneficiary named therein is entitled to recover in this action unless Johnson had forfeited his rights under the policy.

*Third.* This brings us in the last place to a consideration of appellant's contention that Johnson had used heroin and other narcotic drugs to such an extent as to impair his health in violation of the constitution and laws of appellant. According to the constitution and laws of appellant, a member who uses morphine or other drug to the impairment or destruction of his health shall, *ipso facto,* lose his membership and the benefit certificates, and upon the death of a member from such cause his beneficiary forfeits all rights under the policy.

Johnson, when he became a member of the appellant, had knowledge of these provisions, and a compliance with same on his part was essential to the life of his policy and to give the beneficiary therein the right to recover thereon. *Sovereign Camp Woodmen of the World* v. *Newsom, supra,* and cases cited.

The issues as to whether or not Johnson had violated the constitution and laws of appellant by the use of heroin or other drug to the impairment or destruction of his health and whether or not his death was caused by the use of such drug were under the evidence purely of fact.

It could serve no useful purpose as a precedent to set out in detail and discuss the testimony bearing upon these issues. The testimony is voluminous, and after a careful consideration of it we have reached the conclusion that, although the preponderance of the evidence was against the jury's finding, yet it cannot be said as a matter of law that there is no substantial evidence to sustain the verdict.

We find no prejudicial error to appellant in the instructions and other rulings of the court in submitting these issues of fact to the jury.

There is no reversible error, and the judgment is, therefore, affirmed.