GENERAL TALKING PICTURES CORPORATION *v.* SHEA.

4-3031

Opinion delivered June 12, 1933.

*Zeiger & Berliner, George D. Hester* and *Coleman & Riddick,* for appellant.

*J. G. Williamson, Lamar Williamson* and *Adrian Williamson,* for appellee.

SMITH, J., On May 8, 1930, the General Talking Pictures Corporation, hereinafter referred to as the company, instituted a replevin suit against T. A. Shea, to recover the possession of a talking motion picture machine, which the latter had operated at McGehee, Arkansas, under a lease contract from the company. The company had leased the machine to Shea for a period of ten years, under a license contract dated February 4, 1929. The license fee for the ten years period was $5,680, payable as follows: $1,250 when the lease was signed; $750 when the machine was ready for shipment; $3,180 in twelve monthly payments of $265 each, beginning April 20, 1929, and $50 on the 1st day of January of each year during the term.

The lease was executed on a printed form, by filling in the blank spaces for the date, the name of the lessee, the place of installation of the talking picture machine which was the subject-matter of the contract, the approximate date of installation, and the amounts and time of payments.

Motion talking pictures had not come into general use when the lease above referred to was executed. Shea

had for some time been in the moving picture business before executing the lease, and had a place of business used for that purpose, but he was required by the lease contract to make numerous changes in his building to adapt it to the exhibition of talking moving pictures. The lease contract required Shea, at his own cost and expense, to make these changes and alterations, and these were made under the supervision of the company's representative.

The contract provided that ''The company will service the equipment from time to time at the expense of the exhibitor,'' and, further, that: ''The exhibitor shall not obtain any additional, renewal or spare or assembled parts for the equipment otherwise than through the company.''

The lease contract was divided into paragraphs, which were numbered, and opposite each paragraph there was printed, in capital letters, the subject of the particular paragraph. Paragraph 11 was entitled: ''PRIVATE SHOWING,'' and reads as follows: ''No public showing of any sound-film on the EQUIPMENT shall be had until a private test shall have been made in the THEATRE to insure satisfactory adjustment and operation thereof and the EXHIBITOR agrees to telegraph the COMPANY immediately if the EQUIPMENT fails to operate satisfactorily at that time, in the absence of which notification satisfactory functioning shall be conclusively presumed.''

Paragraph 15 was entitled: ''LIABILITY FOR INJURY, ETC.,'' and reads as follows:

''The company shall not be liable for

''(A) Any breakdown, defect or change of condition in the THEATRE or EQUIPMENT, any interruption of service, any loss or damage to any persons or property in or about the THEATRE or elsewhere nor for any damages direct, special or consequential, for any reason whatsoever. The EXHIBITOR agrees to indemnify the COMPANY and save it harmless from any liability or injury to workmen or others resulting from negligence or otherwise or arising out of the installation or use of the EQUIPMENT.

"(B) Any loss, damage or delay caused by strikes, riots, fire, insurrection, war, elements, embargoes, failure of carriers, inability to obtain transportation facilities, acts of God, or of the public enemy, or any other cause beyond the COMPANY's control, whether or not similar to the foregoing."

The concluding sentence of the lease was that it should be construed in accordance with the laws of the State of New York.

The complaint in the replevin suit alleged that Shea had made default in his payments, and had thereby forfeited the right to retain possession of the machine. There was a prayer for the recovery of the machine, and for damages for its detention. Shea had, before the institution of the suit, abandoned the use of the machine, and did not resist the recovery of its possession, but he filed an anwer and cross-complaint, in which he prayed damages in a large sum against the company.

Upon the allegation that the company was a foreign corporation and had done business in this State without complying with the laws thereof authorizing it so to do, the trial court heard only the testimony offered by Shea upon the allegations of his cross-complaint, and there was a verdict and judgment in his favor for $12,500. Upon an appeal to this court, it was held that the lease contract was interstate commerce, and that the company had the right, although it had not been authorized to do business in this State, to maintain a suit to recover the machine and damages for its detention. Upon remanding the cause, it was said: "Appellee argues, however, that, if the court erred in dismissing the complaint of appellant, it was not prejudicial error. The contention of appellee that the only issues in the case were covered by the cross-complaint and the answers thereto is not sound. The issue tendered by appellant's complaint that appellee had breached the contract, and that by reason thereof it was entitled to the balance of the rentals and to $1,000 damages, was not included in the cross-complaint and answer thereto. Had appellant's contract been treated as valid, it might have proved that same

was breached by appellee, and recovered the balance of the rents and any damages on account of the breach, and have set off them against any damages appellee might have recovered.'' *General Talking Pictures Corporation* v. *Shea,* 185 Ark. 777, 49 S. W. (2d) 359.

Upon the remand of the case there was a trial anew in the court below, which resulted in a verdict and judgment for the identical amount of the first judgment which Shea had recovered. The testimony upon the issues raised in the answer and cross-complaint was substantially the same at both trials.

It was alleged by Shea in his pleadings that, while there was no express warranty in the lease contract of the fitness of the machine for the use for which it was intended, there was a warranty implied by law to that effect, and that there had been a breach thereof. There was an allegation also that there had been a breach of the company's obligation to ''service the machine,'' that is, to make it operate, and that, for these reasons, Shea had sustained a large loss, the items of which will be later discussed.

The company sent its representative to install the machine after the building had been altered in accordance with the directions of its sound expert, and a preliminary or private test of the machine was had which the contract required. Shea testified that he was not present at that time, but that he was present when the first public exhibition of the pictures was given. After this exhibition Shea sent the following telegram to the company: ''Open tonight to sell-out business. We find Phonofilm all that you represent it to be and more. Regards.'' In answer to this telegram, the company sent the following reply: ''We thank you for your very encouraging wire of April 1 advising us that you opened to a sell-out business, and that the DeForest Phonofilm has met with your every expectation. Pass the good word along to your fellow exhibitors. If we can be of further service to you, please command us.''

It is very earnestly insisted that, under the provisions of paragraph 11 of the lease contract, copied above, the

telegram furnished and is conclusive evidence of the satisfactory functioning of the machine, but that, if not so, the failure to immediately advise the company that the machine had not functioned and did not function satisfactorily raised a conclusive presumption that it did function satisfactorily.

Numerous cases are cited upon the question of the failure to send the telegram as required by paragraph 11 of the lease contract, our own case of *Carle* v. *Avery Power Machinery Co.*, 185 Ark. 799, 49 S. W. (2d) 599, being among the number. The effect of the Carle case, *supra,* and of the other cases cited, is that a warranty in a sale (and the rule would be the same in a lease), conditioned upon a test of the machine sold or leased, and giving notice of any defects within a time specified for that purpose, if the machine proved defective, is binding, and the purchaser or lessee of the machine who fails to give the notice of defects as required by the contract will not be entitled to resist the payment of the purchase money or rent on account of defects. The rule is not different in New York, according to the laws of which State the contract must be construed.

The telegram from Shea to the company set out above, read by itself or unexplained, would appear to be conclusive that the machine, upon test, had functioned satisfactorily. But the testimony, while conflicting, abundantly supports the finding that the machine did not then or at any later time function saisfactorily. The testimony on the part of Shea was to the effect that the sound was harsh and grating and not easily understood, and that there was a lack of co-ordination of sound and motion, the result being that the exhibition excited the derision of the spectators. and that the continued attempt to use the machine and make it function resulted in an almost total loss of patronage and destroyed the remunerative business which Shea had built up with his motion pictures.

Shea's explanation of the telegram was to this effect. The test was not satisfactory, even to Levy, who had charge of the installation of the machine for the com-

pany, but Levy represented that adjustments would make it so, and that he would remain until the adjustments had been made, and that he could and would make the adjustments. Levy explained, so Shea testified, that the telegram was desired by the company for advertising purposes, and that the representation as to the pictures would be made truthful in a short time. The representation as to the size of the audience was true when made. The testimony on the part of Shea was to the further effect that Levy endeavored for several days thereafter to make the machine function, as he had said he could and would do, but, failing to do so, Levy left without advising Shea that he was going.

Shea also testified that promptly after Levy abandoned the attempt to make the machine function he wrote the company at its New Orleans office, where the contract had been negotiated, asking the attention of Mr. Harrison, who had represented the company in making the contract, requesting that a service man be sent him to make the machine function, and that he wired and wrote the New York office to the same effect, and that he finally wrote a personal letter to an executive vice-president of the company, whom he had previously met, but nothing came of these notices and requests in the way of making the machine function.

There was a conflict in the testimony as to the time and manner in which notice was given to the company; but this issue of fact was submitted to the jury in the instructions on behalf of the company, one of which reads, in part, as follows: "If you find from the evidence therefore that the machine, when installed, privately tested and publicly shown, did not operate satisfactorily, and was unsuitable for the exhibition of talking pictures, and that the defendant did not immediately, that is, within a reasonable time, notify the company that the machine failed to operate satisfactorily, or that it was unsuitable for the exhibition of talking pictures, the court charges you, as a matter of law, that the defendant is not entitled to recover any damages on the ground of an alleged breach of an implied warranty of fitness."

The verdict of the jury, under the above and other instructions, is conclusive of this issue of fact.

One of the points most strongly urged for the reversal of the judgment of the court below is that the court erred in instructing the jury that there was an implied warranty of the fitness of the machine for the use intended. This question must, of course, like all others relating to the construction of the contract, be decided according to the laws of the State of New York, as the parties had agreed that it should be.

Upon the question of the existence of an implied warranty, numerous cases are cited to the effect that, in order to imply a warranty from the language of the contract, an intention to warrant must be found in the contract, and it is argued that, not only is such intention absent, but that the paragraphs 11 and 15, set out above, when read together, expressly exclude that intention, and that these provisions negative an implied warranty, because they leave no field in which it could operate.

From what has already been said, it will appear that the jury was warranted in finding that there was no conclusive presumption that the machine had functioned satisfactorily arising out of the failure of Shea to notify the company to the contrary; nor do we think it was the purpose of the first section of the first subdivision of paragragh 15, set out above, to accomplish that result. This entire paragraph must be read together to correctly interpret any portion of it.

The title of the paragraph, as has been said, is: "LIABILITY FOR INJURY, ETC." In the first sentence of the first subdivision of paragraph 15, after first contracting for an exemption to itself against any breakdown, defect or change of condition in the theatre or equipment, or through any interruption of service, there follows an exemption from liability "to any persons or property in or about the theatre or elsewhere" for any reason whatsoever. Further and more conclusive effect is attempted to be given to this exemption of liability in the sentence following, where the obligation is imposed upon

the exhibitor "to indemnify the company and save it harmless from any liability or injury to workmen or others resulting from negligence or otherwise or arising out of the installation or use of the equipment."

Subparagraph (B) of paragraph 15 deals with the liability of the company to the exhibitor, the other contracting party, and contains certain exemptions from liability to him, to which there would be no point and for which there could be no necessity, if the company had, in the previous subparagraph, exempted itself from liability "for any damages direct, special or consequential for any reason whatsoever."

We think a fairer and more reasonable construction of subparagraph (A) is that it relates only to the subjects mentioned and has no purpose to exempt from liability for a breach of warranty implied by law.

This appears to be an appropriate place to say that, under the laws of New York, as we understand them, there was an implied warranty of the suitability and fitness of the machine, unless the parties have contracted against a warranty, which, as we have said, they did not do.

The case of *Hoisting Engine Sales Co. v. Hart*, 237 N. Y. 30, 142 N. E. 342, is extensively annotated in 31 A. L. R. 536. A headnote in that case reads as follows: "A warranty of fitness is implied in leasing machinery for performance of specified work for which it was designed." In the opinion in that case by the Court of Appeals of New York, Justice CRANE, who delivered the opinion of the court, quoted with approval from Halsbury's Laws of England (vol. 1, § 1117) the following statement of the law: " 'The owner of a chattel which he lets out for hire is under an obligation to ascertain that the chattel so let out by him is reasonably fit and suitable for the purpose for which it is expressly let out, or for which, from its character, he must be aware it is intended to be used; his delivery of it to the hirer amounts to an implied warranty that the chattel is, in fact, as fit and suitable for that purpose as reasonable care and skill can make it'."

It must be remembered that the contract related to a machine about which Shea had no knowledge whatever, but for the use of which he was required to pay $2,000 before its installation was commenced, and that he was also required to incur expense preparatory to the installation of the machine, which, if it did not satisfactorily display talking moving pictures, was valueless. Under these circumstances we think it would not be a fair and reasonable construction of the contract to say that there was no implied warranty of the fitness and suitability of the machine for the purpose for which it had been leased, this being the only thing which gave it any value at all, when the contracting parties had not stipulated that there was no warranty, either express or implied.

We conclude therefore that the court did not err in telling the jury, as a matter of law, that there was an implied warranty of the suitability of the machine for its intended use.

It is insisted very earnestly that the judgment of the court below should be reversed because of error in an instruction on the measure of damages given to the jury at Shea's request and over the objection of the company. It has been said that the cross-complaint alleged, as a basis for recovering damages, that there had been both a breach of an implied warranty of the fitness of the machine and a breach of the obligation to service the machine by making it operate and perform the functions for which it was intended.

The instruction on the measure of damages, given at the request of Shea, apparently does not distinguish the damages resulting from one cause or the other, and many cases are cited to the effect that the same rule to measure the damages cannot be applied in both cases. As an abstract proposition, the company appears to be correct in this contention; but we think the error was not prejudicial, for reasons which we proceed to state.

According to the testimony on Shea's behalf, he did not rescind the contract, as he had the right to do, but he continued, for more than two months, in an en-

deavor to operate the machine. During all this time he was insisting that the company "service it" and make it operate. He bought from the company new parts and equipment, and paid two of the $265 notes. The number of admissions dwindled rapidly until finally there was no appreciable patronage. Shea testified that he repeatedly warned the company that he would refuse to pay additional notes and would discard the machine unless it was made to function, and finally Mr. Buch, a representative of the company, was sent to McGehee. But this representative was a collection agent, and not an engineer. Shea testified that he asked Buch if he could make the machine function, and Buch said he could do so, and Shea said to him, "There won't be any question about your money if you will put the equipment in condition to function." This conversation appears to have occurred over the telephone, Shea being in Louisiana and Buch in McGehee. Shea left Louisiana at 11 P. M. Saturday night, driving to McGehee, where he arrived early Sunday morning, but he found later that morning that, instead of fixing the equipment, Buch had wrecked it by removing the optical system, which action put the machine entirely out of commission. Later this suit was brought to recover the machine.

Numerous instructions submitted the question whether this action of Buch was authorized on the part of the company, this right being made dependent on the question whether Shea had failed to comply with his obligations under the contract.

One of these instructions reads as follows: "On the issue of whether or not the plaintiff breached the contract by a failure to furnish service requested by the defendant, the court charges you that, if you find from the evidence that prior to such request the defendant himself had breached the contract by a failure to pay any note at its maturity, without a prior and unwaived breach by plaintiff, and that such default existed at the date of the request for service, the plaintiff was not required to furnish service while such default continued,

and would not be liable to the defendant for damages on account of such failure to service the equipment.''

The instructions on the measure of damages permitted a recovery, if warranted by the testimony, of the following items: (a) The consideration paid for leasing the machine; (b) money paid the company for spare parts and replacements; (c) expense for labor and material in the installation of the machine. From this last-named element of damages the jury was directed to exclude the items which were or could have been utilized in connection with the installation of another and different talking motion picture machine which Shea later installed; (d) expense incurred in a reasonable effort to make the machine function properly, together with (e) such additional amounts, if any, ''as you may find from the preponderance of the evidence that the defendant. lost in the operation of his motion picture business in the city of McGehee due to failure of such machine to function properly, while defendant was, in good faith, acting as a reasonable and prudent person, trying to use said machine for the purpose for which it had been leased''; and also (f) such net profits as the jury might find had been shown with reasonable certainty that Shea would have earned, ''but did not earn because of plaintiff's breach of contract relative to installation, or breach of implied warranty of the reasonable fitness of said machine for the purpose for which it was intended.'' The net profits, if any, were limited ''to the period from the time said machine was installed in defendant's theatre in McGehee to the time when you find from the evidence the defendant could and should, as a reasonable and prudent man, have discarded said machine,'' and have secured another ''to perform the function for which said machine was leased.''

Numerous instructions were given, which we do not set out, but, when read together, required the jury, before finding for Shea in any amount, to find that the company had first breached the contract by furnishing a defective machine, which it later refused and failed to put in working order, and the verdict of the jury reflects

that this finding was made. This being true, inasmuch as the machine had been repossessed by the company, we think there was no prejudicial error in failing to have the jury find, separately, the damages accruing under each cause of action; indeed, under the facts of this case the causes of action appear to coalesce.

There was testimony sufficient to support a recovery on the items of damage enumerated in the instruction on the measure of damages far in excess of the damages recovered. These items included the original and subsequent payments, expenditures for spare parts and replacements, for labor and material and other costs of installation, for expenses in attempting to make the machine function, and for loss of profits.

It is insisted that the instruction permitted Shea to recover profits earned, and also expenses incurred in earning the profits. But the instruction does not appear to be open to that objection. A recovery of only net profits was authorized. The items above mentioned are not operating expenses, but were necessary expenses incurred in the attempt to make the machine operate and which would not have been incurred had such a machine been furnished as the contract contemplated.

The case of *Beeman* v. *Banta,* 118 N. Y. 538, 23 N. E. 887, 16 Am. St. Rep. 779, was a suit for damages for breach of warranty to construct a refrigerator, and the Court of Appeals of New York there said that ''Gains prevented, as well as losses sustained, are proper elements of damage'' in suits of that character.

In our own case of *Harmon* v. *Frye,* 103 Ark. 584, 148 S. W. 269, in which a building and apparatus for operating a moving picture show were leased for the purpose of operating the picture show, the lessee was wrongfully evicted from the building and deprived of the picture machinery. It was there held that the lessee was entitled to recover as damages the amount of profits of which he had been deprived and which had been established by the proof.

We think no element of damage was submitted to the jury which was not warranted by the testimony, and,

upon a consideration of the entire record, we find no prejudicial error. The judgment must be affirmed, and it is so ordered.