ARMCO STEEL CORP. *v.* FORD CONSTRUCTION CO.

5-3125                                    372 S. W. 2d 630

Opinion delivered November 26, 1963.

*John E. Coates,* for appellant.

*Brown, Compton & Prewett, Rose, Meek, House, Barron, Nash & Williamson,* for appellee.

PAUL WARD, Associate Justice. In August, 1960 the El Dorado Waterworks and Sewer Commission let a contract to the Ford Construction Company to construct a sanitary sewerage plant at a total cost of $204,468. Pursuant to Ark. Stat. Ann. § 14-604 (Repl. 1956) the construction company furnished a bond with United States Fidelity and Guaranty Company. Hereafter the latter will be referred to as U. S. F. & G. The construction company will be referred to as Ford, and the Commission will be referred to as El Dorado.

El Dorado employed Max Mehlburger and Associates, engineers of Little Rock to prepare plans and specifications for the proposed sewerage plant. Said plans and specifications were completed prior to June 12, 1960. On that date the Armco Steel Corporation (hereafter called Armco), domiciled in Ohio, purchased two sets of said plans and specifications preparatory to selling Ford certain piping and equipment to be used in constructing said sewerage plant. Later Ford and Armco entered into a contract (or purchase order) wherein the latter agreed to furnish certain definitely described articles for the price of $37,195.33. Included in these articles was a sizeable quantity of 21 inch metal piping. The 21 inch pipe was to be laid or buried in a levee between two lagoons. This litigation stems from disagreements in some way connected with a portion of this 21 inch piping.

Summarily stated, here is how the disagreements arose. Work began on the project in the early part of 1961, and by mid-September 1961 some of the 21 inch pipe had been laid in the levee. In early October 1961 tests made by Ford revealed leaks had developed in about 25 joints. Later, inspections were made by different parties but no way was found to stop the leaks, and on December 30, 1961 Mehlburger and El Dorado ordered Ford to remove the pipe and replace it with other piping.

In an attempt to adjust matters between Ford and Armco, the latter offered to take back the rejected pipe and cancel the balance of $5,955.78 owed by Ford. Upon Ford's refusal to accept this offer of settlement, renewed efforts to reach a settlement without resorting to court

action were made over a period of several months. Again, no settlement was reached and this litigation followed. Armco sued Ford (and U. S. F. & G) for the balance due on merchandise ordered and delivered, and Ford counter-claimed for alleged damages.

For clarity and convenience we, at this point, divide our discussion into two separate parts, based upon the above pleadings. *One:* Armco recovered a judgment against Ford and U. S. F. & G. for the balance due on merchandise. The trial court refused to allow Armco statutory penalty and attorney's fee, and this is urged to be reversible error. *Two:* Ford recovered a judgment against Armco (on the cross complaint) for damages allegedly resulting from Armco's breach of warranty.

*One. Penalty and Attorney's Fee.* Armco alleged Ford owed a balance of $5,955.78 on account, Ford admitted signing the purchase order but denied the materials were delivered and accepted. Ford also claimed a credit of $1,778.19 for pipe returned and $230 for another item. Armco filed a reply, conceding the above named credits, leaving a balance of $3,947.59. Thereupon, when appellees offered to confess judgment for the above amount the court instructed the jury to return a verdict for Armco against Ford and U. S. F. & G. for $3,947.59. Armco then moved the court to assess the statutory 12% penalty and attorney's fee against U. S. F. & G. under the provisions of Ark. Stat. Ann. § 66-3238 (Supp. 1961). The motion was denied by the trial court. This action by the trial court is here assigned as error.

We do not agree with appellant. As pointed out above, as soon as Armco reduced its claim to the correct amount Ford and U. S. F. & G. promptly confessed judgment for that amount. In the *Great So. F. Ins. Co.* v. *Burns & Billington,* 118 Ark. 22, 31, 175 S. W. 1161, the plaintiff amended its complaint to reduce its claim but the insurance company *did not* then confess judgment but went to trial. The judgment was for the amended amount, and we held the penalty attached. This Court, however, made the following announcement which is decisive against Armco:.

"If the insurance company had desired to avoid the penalty and attorneys' fee provided for by the statute, it should have offered to confess judgment for the amount sued for in the amended complaint."

Although the above quote may be classified as dictum, yet it is a clear statement of the rule consistently followed by the court. See: *National Fire Insurance Company* v. *Kight*, 185 Ark. 386, 47 S. W. 2d 576; *Broadway* v. *The Home Insurance Co.*, 203 Ark. 126, 155 S. W. 2d 889. The first case construed C. & M. Digest § 6155 and the latter case construed Pope's Digest § 7670, both sections being the same as Ark. Stat. Ann. § 66-3238 (Supp. 1961) the section relied on here by appellant.

We conclude, therefore, that the trial court correctly refused to assess the statutory 12% penalty and attorney's fee.

. *Two. Damages.* In connection with appellee's answer to Armco's complaint, Ford alleged a counter-claim against Armco in the amount of $38,176.03. Ford's claim was based on four counts: (1) breach of contract, (2) breach of warranty, (3) negligence, and (4) fraud. Generally speaking, all counts were based on the contention by Ford that the materials furnished by Armco failed to meet required specifications. After denying all four counts, Armco affirmatively pleaded the following provision in the purchase contract:

"There are no understandings, terms or conditions not fully expressed herein. There is no implied warranty or condition except an implied warranty of title to and freedom from encumbrance of the products sold hereunder and in respect of products bought by description that they are of merchantable quality. Seller's liability hereunder shall be limited to the obligation to replace material proven to have been defective in quality of workmanship at the time of delivery, or allow credit therefor at its option. In no event shall Seller be liable for consequential damages or for claims for labor."

On appeal, appellant urges three separate grounds for a reversal. *A.* The trial court erred in refusing to

direct a verdict. *B.* Error in giving a certain instruction on measure of damages. *C.* Error in refusing a certain instruction. After a lengthy trial, the jury returned a verdict in favor of Ford in the amount of $26,176.03 on the first three counts, the last count (on fraud) was abandoned by Ford.

*A.* Appellant's contention that the trial court erred in refusing to direct a verdict in its favor at the close of all the testimony is based principally on a question of law which is ably and exhaustively argued in its brief. In this argument no stress is placed on the sufficiency or insufficiency of the evidence. In our discussion hereafter, and without expressing any opinion as to the merits of the other two counts, we consider only the second count which is based on an implied warranty. Referring back to section "6" of the purchase order copied above, it appears clear to us that it contains an implied warranty on the part of Armco. The pertinent language is:

"There is no implied warranty ... except an implied warranty . . . of products bought by description that they are of merchantable quality."

There is, and could be, no contention that the subject merchandise here was not "bought by description." We see no reasonable ground for a dispute over the meaning of the words "merchantable quality." In the context here used they could only mean pipe fit to be placed underground for years of service in a sewer system. During the trial several disputed questions of fact arose, such as: were the pipes properly inspected? was Ford diligent in reporting defects to Armco? was an inspector present when the pipes were installed? etc. We deem it unnecessary to consider these questions of fact for the reason that the jury has passed upon them under instructions not objected to by appellant, and they are also not questioned by appellant in arguing the point now under discussion.

First, appellant argues that Ford cannot recover because the proof shows he did not comply with para-

graph "5" of the contract or purchase order signed by both parties. It reads:

"Claims by the buyer must be made promptly upon receipt of shipments and seller given an opportunity to investigate."

To the same effect Armco relies on a clause in paragraph "6" which reads:

"Seller's liability hereunder shall be limited to the obligation to replace material proven to have been defective in quality of workmanship at time of delivery ..."
We are unable to agree with this position taken by appellant. The records show that when the pipe was delivered to Ford at El Dorado it was heavily coated with tar or asphalt so that Ford had no way of detecting whether the pipe was welded or riveted or whether it would be watertight. The only way Ford (or Mehlburger) could have discovered defects such as leaks in the pipes was to put them in place (with the joints coupled together) and subject them to water pressure. When this was done it became clearly evident that the pipes were not watertight and were not therefore of "merchantable quality."

However, the principal ground relied on by appellant is based on the last sentence in paragraph "6" which reads:

"In no event shall Seller be liable for consequential damages ..."

Appellant presents an able argument and an exhaustive array of authorities from other jurisdictions to the effect that Armco had a legal right to contract against liabilities for "consequential damages." However, we find it unnecessary to pass upon the effect of the cited authorities or whether they should be followed by this Court. The reason is that, before appellant would be entitled to an instructed verdict, it must also show that *all* damages resulting from defective materials furnished, were "consequential damages"—that is, damages not recoverable under the implied warranty of fitness for

the purpose intended. After careful consideration we have concluded there is evidence in the record to show Ford did suffer *some amount* of damages resulting from Armco's breach of warranty regardless of whether such damages are termed consequential damages, direct damages, or foreseeable damages. It is not denied that the pipe leaked or that Ford suffered a financial loss in trying to correct the defective pipe and in removing the same. It was up to the jury to say whether Ford acted reasonably in failing to detect the defects in the pipe before it was installed. It seems therefore that the real question for decision is whether ''consequential damages'' necessarily includes all damages including direct and foreseeable damages. We hold the quoted words are not so inclusive, as many authorities indicate. Black's Law Dictionary (4th ed.) defines ''consequential damages'' as

''Such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.''

In the case of *Despatch Oven Co.* v. *Rauenhorst*, 40 N. W. 2d 73, 79 (Minn. 1949) they had this to say:

''The 'consequential damages' referred to in the clause in question are such damages as do not arise directly according to the usual course of things from the breach of the contract itself, but are rather those which are the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made.'' (Citing cases.) In the case of *General Talking Pictures* v. *Shea*, 187 Ark. 568, 61 S. W. 2d 430, we said that if a disclaimer is effective at all, it will not extend by implication to liabilities which it does not by its express terms cover. There is, of course, no contention of Armco here that its disclaimer covered any particular items of damages. In 17 C.J.S. *Contracts* § 262 it is stated:

''Contracts of this nature are not favored by the law; they are strictly construed against the party rely-

ing on them, and clear and explicit language in the contract is required to absolve a person from such liability.'' 5 Corbin, Contracts § 1011, in discussing Causation and Foreseeability, states:

''Another form in which the present rule is often stated is that damages are recoverable only for injuries that are the natural result of the breach. This seems to have no meaning other than that there was reason to foresee such injury.''

We cannot escape the conclusion in this case that Armco, skilled in the business of producing and furnishing sewer pipes, could have reasonably foreseen that a leaky pipe would cause damage. It is bound to have known a leaky pipe would not be usable, that it would have to be removed, and that this would be expensive to Ford. In this connection, the statement found in *Main* v. *Dearing,* 73 Ark. 470, 84 S. W. 640 is applicable, where the Court, in speaking of merchandise furnished for sale, quoted: ''The purchaser cannot be supposed to buy goods to lay them on a dunghill.'' It would be unreasonable to hold in a situation like the one here presented that Armco could warrant its product to be usable in one breath and then in the next breath disclaim all liability if it is unusable. It is our conclusion that appellant was subject to liability in some amount for a breach of its implied warranty and, therefore, was not entitled to a directed verdict in its favor on Ford's counter-claim.

(b) *Measure of Damages.* The jury returned a verdict in favor of Ford in the amount of $26,176.03. It is the contention of appellant that an instruction (requested by Ford) given by the court constituted reversible error in that it contained the wrong measure of damages. The instruction in question reads:

''If you find for Ford on its counter-claim for breach of warranty and if you further find from a preponderance of the evidence that the material in question was of a substantially different description or kind than the material ordered by Ford, and that the difference was not readily discernible upon delivery, or that the material

was inherently incapable of being made watertight by reasonable and practical means after delivery, or that Ford tendered the material in question to Armco after it was unable to stop the leakage, and Armco refused to accept it or to replace it with suitable material, then and in either of those events your verdict for Ford will be for such sum as you find from a preponderance of the evidence Ford would have received from the City of El Dorado for furnishing and installing the material in question had it been allowed to remain in the levee, and also for such expense reasonably incurred by Ford in attempting to make the material watertight, and the cost and expense reasonably incurred by Ford in removing the material from the levee and in redressing and shaping the levee after removal."

An analysis of the above instruction reveals that it permitted the jury to find four separate elements of damage, viz: 1—amount due from El Dorado for installing the pipe; 2—the expense of trying to make the pipe watertight; 3—the cost of removing the pipe; and, 4—cost of leveling the ground. The only element of damages in the instruction which appellant objects to is number 1 above. Appellant points out that this item amounts to $17,925—2,390 (feet of rejected pipe) multiplied by $7.50 (the price per foot El Dorado contracted to pay).

This, argues appellant, is allowing Ford to receive a gross profit where he was entitled to receive only a net profit. To sustain this contention appellant cites the case of *Border City Ice & Coal Co.* v. *Adams,* 69 Ark. 219, 62 S. W. 591. Conceding, for the purpose of this opinion, appellant to be right on the question of law, we think there is no reversible error in this case because it is not shown that Ford is actually receiving more than his net profit under the contract. Included in the amount of $17,925 is the cost of the pipe and the expense of installing it. That being true, no reversible error has been shown.

(c) Finally, appellant says it was reversible error for the court to refuse to give its instruction to the effect that Ford was bound by all the terms of the con-

tract it signed whether Ford read the entire contract or not. This requested instruction refers to certain testimony indicating Ford did not read §§ 5 and 6 in the contract between appellant and Ford. Even though appellant technically may have been entitled to the above instruction it was harmless error for the court to refuse to give the same, and appellant has not been prejudiced. None of the questioned provisions of the contract were excluded from the record or from the consideration of the jury.

Finding no error, the judgment appealed from is in all parts affirmed.

Affirmed.

ROBINSON, J. concurs.