Victor R. UPSHAW, Plaintiff,

v.

EQUITABLE LIFE ASSURANCE SOCIE-
TY OF the UNITED STATES and The
Retirement Board as Created by the
Retirement Plan for Salaried Employees
of R. J. Reynolds Tobacco Company and
John R. Trulove, Robert D. Rickert, E.
T. Isley, III and Henry L. Russ, Jr.,
Defendants.

No. LR–75–C–84.

United States District Court,
E. D. Arkansas, W. D.

Feb. 22, 1980.

Jack L. Lessenberry, Little Rock, Ark., for plaintiff.

H. William Allen, Wright, Lindsey & Jennings, Phillip Carroll, Rose, Nash, Williamson, Carroll, Clay & Giroir, Little Rock, Ark., for defendants.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

The plaintiff, who has been an employee of the R. J. Reynolds Tobacco Company (Company), claims that in 1972 he injured his back while engaged in a work related activity. He applied for medical retirement benefits in August, 1972, pursuant to the Reynolds Retirement Plan for Salaried Employees (Plan). The Retirement Board (Board), which had the exclusive right to determine eligibility under the Plan, denied his claim in late February, 1973. Had he received benefits, they would have begun March 1, 1973. On March 24, 1975, he filed a complaint against the R. J. Reynolds Tobacco Company and the Equitable Life Assurance Society of America, alleging that although he was qualified for medical treatment, the Board had arbitrarily refused his application and in so doing had breached its contract with him. The plaintiff further asserts that, as a result of the Board's arbitrary determination that he was not eligible for retirement benefits, the Company refuses to distribute proceeds of the sale of his share in the Profit Sharing Incentive Plan until such time as he acknowledges that he resigned voluntarily.[1]

Reynolds filed its answer May 20, 1975, alleging *inter alia* that plaintiff's failure to join an indispensable party, i. e., the Retirement Board. The defendant Company's Certificate of Service indicates that the plaintiff was mailed a copy of the answer on May 20, 1975. It was not until September 22, 1977, that the plaintiff filed an amendment to his complaint to add the Retirement Board as a party defendant. The Board answered the amended complaint on September 4, 1979, and raised the statute of limitations as a defense to the plaintiff's claim. On January 25, 1980, the defendant Board filed its motion for summary judgment based on the plaintiff's failure to bring action against the Board within the time period allowed. Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (FRCP) is, of course, proper only when there are no genuine questions of material fact to be determined. *Inland Oil and Transport Co. v. United States,* 600 F.2d 725 (8th Cir. 1979). The defendant maintains that the amendment to the complaint was filed outside the relevant period of limitations and that there is no evidence to the contrary.

---

1. In its answer, the Company stated that all the plaintiff need do to receive these funds was to file an application. In any case, the Company is no longer before the Court, its motion for summary judgment having been granted on January 3, 1979.

■ According to the complaint, this action is contractual in nature:

"7. That Reynolds and Equitable have breached their contracts and agreements with the plaintiff. . . ."

Therefore, the statute of limitations for express or implied contracts (here, the Plan) is the applicable statute.

Section 11 of the Plan stated:

"The Plan shall be governed, administered, regulated, and construed under the laws of the State of North Carolina."

Courts have not always honored such agreements concerning the parties' choice of law, particularly when to do so would be contrary to the public policy of the forum. Instead, the law of the place of making the contract (here North Carolina) or of the place of performance (here North Carolina at least as to the decision concerning disability) have been applied. In 1972 the Supreme Court held that a forum selection clause was a vital part of the contract and should be binding unless enforcement would be unreasonable or unfair. *The Bremen, et al. v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Similar reasoning should apply to a choice-of-laws clause, particularly where, as here, to uphold it is reasonable and the outcome comports with the other traditional bases for the selection of which law to apply. Furthermore, Arkansas sometimes has held that the intent of the contracting parties determines the governing law. *See, e. g., General Talking Pictures Corp. v. Shea,* 187 Ark. 568, 61 S.W.2d 430 (1933); *McDougall v. Hachmeister,* 184 Ark. 28, 41 S.W.2d 1088 (1931); *North American Union v. Johnson,* 142 Ark. 378, 219 S.W. 769 (1920); *Lanier v. Union Trust Co.,* 64 Ark. 39, 40 S.W. 466 (1897). Thus, it is the North Carolina statute of limitations which will be applied.[2]

■ That law requires that an action based on contract must be brought within three years after the cause of action accrues. *N.C.Gen.Stat.* 1–52(1). The statute does not begin to run until the agreement is to be performed or payment becomes due by its terms. *See generally,* 51 Am.Jur.2d Limitation of Actions § 126 (1970). Had the Board decided that the plaintiff was entitled to medical retirement, the first payment "due" would have been on March 1, 1973, according to the Board's undisputed Answers to Interrogatories. When the injured party has a claim upon which to sue, the action has accrued. *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.,* 277 N.C. 216, 176 S.E.2d 751 (1970). When the Board did not make the March, 1973, payment, the alleged breach occurred and the statute started running. Given the North Carolina limitation of three years from the accrual of the action, plaintiff had until March 1, 1976, to file his suit. On March 25, 1975, he filed a timely suit against the R. J. Reynolds Tobacco Company. But he did not file suit against the Retirement Board until the filing of his amended complaint on September 22, 1977. Furthermore, from at least May 20, 1975, the plaintiff had notice that at least arguably the Board was an indispensable party. His inaction cannot, then, be attributed to lack of knowledge or mistake as to the identity of the party.

■ Indeed, the plaintiff has given no reason for his failure to join by amendment the Board within three years of the accrual of its action. On September 4, 1979, the defendant filed two requests for admission.

"*Request No. 1:* Admit that you had notice of the assertion that the Retirement Board was an indispensable party to this action from receipt of the separate Answer of R. J. Reynolds Tobacco Company served on you on May 20, 1975.

"*Request No. 2:* Admit that your application for disability and retirement benefits was denied by the Retirement Board more than three years before your

---

2. Additionally, to be consistent with this Court's view that the Board is "present" wherever the Company is present when that presence is related to litigation, it is necessary that all Company employees be subject to the same statute of limitations wherever they may be located. It is proper that the parties' agreement should set forth which one statute to apply.

Amendment to Complaint filed September 22, 1977, was filed or served on the Retirement Board."

The plaintiff has made no response. According to the provisions of Rule 36, FRCP, the matter of which an admission is requested is admitted if the party to whom it is addressed does not respond within the allowable time, here 30 days. With these admissions, the Court must conclude that there are no material factual disputes over notice concerning an indispensable additional party, or over the period of time between the plaintiff's application denial and his amendment to join the Retirement Board. His claim accrued with the denial of his benefit, as a matter of law. The period from accrual to amendment, which was more than three years, exceeded the period of time allowable for filing a cause of action according to North Carolina law. So the amendment to add a party was filed outside the period of limitations.[3]

The effect of such a late amendment is dealt with in Rule 15(c), FRCP:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

It is clear that "[a]lthough the Rule refers to 'an amendment changing the party' it has properly been held to sanction relation back of amendments which add or drop

parties as well as those substituting new parties . . .," so long as certain conditions are met. 3 Moore's Federal Practice ¶ 15.15[4.–2] (2d ed. 1979). (This, however, is not the universal view. *See Anderson v. Phoenix of Hartford Insurance Co.,* 320 F.Supp. 399, 404 (W.D.La.1970), and the cases cited therein, indicating that relation back under Rule 15(c) applies only in a case in which the party is changed, but not to additional parties.) The Rule requires a showing that the amendment arises out of the same conduct as set forth in the original pleading *and* that the new party received such notice of the action as to prevent prejudice to him, *and* that he knew, or should have known, that but for a mistake concerning identity of the proper party he would have been brought into the proceedings earlier.

In this case, the first showing has been made; the conduct complained of is identical in the original and amended complaints.

As to the second showing, one standard has been articulated as:

"The purpose of [Rule 15(c)] is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation."

*Longbottom v. Swaby,* 397 F.2d 45, 48 (5th Cir. 1968). It is not the notice of the incident but the notice of the institution of action which must be shown to be within the statute. *Craig v. United States,* 413 F.2d 854 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969). The Company received notice of the pending litigation within the limitations period. The Retirement Board is a creature of the Company, the members appointed by the Company Board of Directors. The Company is headquartered in Winston-Salem, North Carolina. The Board holds meetings in Winston-Salem, North Carolina, where its members live. Although the Company has no power to compel particular disbursements and Board decisions are communicated directly to the applicant, the Plan is

---

**3.** When the plaintiff proposed amendment of his complaint to join the Retirement Board, no objection based on the statute of limitations was raised.

"present," jurisdictionally speaking, wherever the Company is present when the Company's presence is related to the litigated subject. While notice to the Board is nowhere claimed, it is often assumed when there is such a close relationship as herein. *See, e. g., Pittman v. Anaconda Wire & Cable Co.,* 408 F.Supp. 286 (E.D.N.C.1976). Given these facts it is likely that the Board as well as the Company had notice of the litigation against the Company, thereby meeting the second requirement of the Rule.

■ But that is not the end of the inquiry. Professor Moore says:

> "Plaintiff's inexcusable neglect continues to be a proper consideration in Rule 15(c) determinations."

3 Moore's Federal Practice ¶ 15.15[4.–2] (2d ed. 1979). *See, e. g., Thibodaux v. Prudential Minerals Exploration Corp.,* 483 F.2d 79 (5th Cir. 1973). Mr. Upshaw had actual notice of the Board's indispensability and the proper name of the Board well within the period of limitations. Yet he did nothing for two more years, and offers no reason for his delay. Certainly there is no claim that the defendant misled him so as to be estopped from asserting the limitations bar.

A discussion of the scope of relation back under Rule 15(c) by the Court of Appeals for the Eighth Circuit included this observation:

> "It [1966 amendment to Rule 15(c)] was primarily intended to alleviate harsh decisions which had defeated claims or technicalities that should be decided on their merits. Private parties who had actions against some government agency were the principal victims."

*Gridley v. Cunningham,* 550 F.2d 551 (8th Cir. 1977). The Court went on to deny relation back in part because a requirement for bringing in a party was not met. That requirement was that there be a mistake in the identity of the proper party in the original action. Here, although there was such

a mistake originally, the plaintiff was given notice of his mistake approximately ten months before the period of time allowed for filing a claim expired. The plaintiff was not, then, suffering under a misapprehension which was the cause of his failure to file a timely amendment to name the indispensable party. The defendant Board should not, in the face of the plaintiff's inaction during the limitations period, be held thereafter to know that but for a mistake in identity it would be joined as a party, particularly when it had informed the plaintiff of the proper party and noted its indispensability well before the limitations period had run. As in *Gridley, supra,* the plaintiff has failed to make one part of the three-fold showing required for there to be relation back of an amendment filed pursuant to Rule 15, FRCP. *See Craig, supra* at 857. To deny relation back in such a case does not rely on technicalities but rather on the notice requirements basic to Rule 15 as amended in 1966. The requirements of Rule 15(c) are not met and, therefore, the amendment will not relate back. The Board was not named party defendant within the allowable time.

■ The dismissal of the cause against an indispensable party has repercussions beyond the effect on that one party. Remaining as a party defendant in this case is the Equitable Life Assurance Society of the United States.[4] The cause against any party may not go forward in the absence of an indispensable party, if the court in equity and good conscience so decides. Rule 19(b), FRCP. According to Professor Moore, the use of the term "indispensable" is conclusory. When such a conclusion is reached on the basis of the facts set out in Rule 19(b) and judicial precedents dating back to 1789, the trial court commits fatal error if it does not dismiss for want of an indispensable party. *See* 3A Moore's Federal Practice ¶ 19.07–2[0] (2d ed. 1979). So it is first necessary to analyze whether the Board is indispensable, as all the parties

---

**4.** Equitable has denied potential liability equal to the requisite jurisdictional amount. The Court will not decide this claim, such decision being unnecessary in view of the disposition of the case on other grounds.

have seemed to assume. It is the third of the factors in Rule 19(b) which independently supports a finding of indispensability. A judgment rendered in the absence of the Retirement Board will not be adequate; indeed, without reaching the claim against it, no relief is possible since the Board alone determines whether or not a claimant may be medically retired. *See* 3A Moore's Federal Practice ¶ 19.07–2[3] n. 2 (2d ed. 1979).

In *Shields v. Barrow,* 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854), Justice Curtis stated:

> "Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it . . . are commonly termed necessary parties; but if their interests are separable from those of the parties before the court so that the court can proceed to a decree, and do complete and final justice, without affecting other persons, not before the court, the latter are not indispensable parties. . . . Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience . . . . ."

are indispensable parties. With the caveat that Rule 19 cannot be ignored, the Supreme Court cited with approval the *Shields* test of indispensability in *Provident Tradesmen's National Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). No final decree regarding the plaintiff's claim for disability payments can be entered without affecting the Board's interest, even if that decree only settles part of the total controversy, for in so doing, a decision concerning disability would necessarily be made. Since the liability of Equitable depends upon a finding of disability, that liability, if any, is so intertwined with the Board's as to make a

separate adjudication impossible. *Cf.* Answer of the Equitable Life Assurance Society of the United States ¶ 2, with Answers to Interrogatories Propounded to the Retirement Board . . ., Answer No. 11. Whether under the standards of Rule 19(b) or of *Shields,* the Board is an indispensable party. In its absence the action cannot go forward and the case must be dismissed.

It is therefore Ordered that the motion for summary judgment filed by the Retirement Board be, and it is hereby, granted and this cause is hereby dismissed as to the Board.

It is further Ordered that the cause of action against Equitable Life Assurance Society be, and it is hereby, dismissed on motion of the Court in the absence of an indispensable party.