240 P.3d 1189 (2010)
Kevin Randall PERRIN and Cindy Perrin, husband and wife, and the marital community thereof, Appellants,
v.
Jeff STENSLAND and Jane Doe Stensland, husband and wife, and the marital community thereof; Hattie Van Weerdhuizen, Defendants,
Dale Van Weerdhuizen, Personal Representative of the Estate of Gordon Van Weerdhuizen, Respondent.
No. 63539-5-I.
Court of Appeals of Washington, Division 1.
October 25, 2010.
*1190 Howard M. Goodfriend, Edwards Sieh Smith & Goodfriend, Seattle, WA, Donald W. Cater, Carter & Fulton, Everett, WA, for Appellants.
Marilee C. Erickson, Reed McClure, Patrick N. Rothwell, Davis Rothwell Earle & Xochihau PC, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 A plaintiff injured in a collision commences a personal injury suit shortly before the statute of limitations expires, naming the driver of the other vehicle as a defendant. Unknown to the plaintiff, the driver has died since the collision. Outside the limitations period, the plaintiff files and serves an amended complaint substituting the driver's estate as defendant. Does the amended complaint relate back to the timely original complaint under CR 15(c)?
¶ 2 In this case, the trial court concluded the plaintiff should have realized sooner the need to amend the complaint; the delay was inexcusable neglect; and therefore, relation back was not permitted. We reverse. The focus under CR 15(c) is upon what the new defendant knew or should have known before the limitations period expired, not upon the diligence of the plaintiff in amending the complaint. The driver's estate had notice of the pending action by way of timely service upon the driver's widow, who had insurance coverage under the same policy as the driver. *1191 The estate was not prejudiced in its defense and should have known that the action would have been brought against the estate had the plaintiff not mistakenly believed the driver was still alive. Under these circumstances, where all the prerequisites for relation back were met, the trial court should have denied the motion to dismiss.

FACTS
¶ 3 Appellant Kevin Perrin was riding in Jeff Stensland's car when it collided with the car Gordon Van Weerdhuizen was driving. Perrin was injured.
¶ 4 The accident occurred on August 15, 2003. The statute of limitations for a personal injury action is three years. RCW 4.16.080(2). On July 3, 2006, Perrin and his wife and marital community filed a summons and complaint for personal injuries in Whatcom County Superior Court, initially naming as defendants Stensland and Van Weerdhuizen and their spouses and marital communities.
¶ 5 On July 14, 2006, Perrin made service on the Stenslands.[1] On July 24, 2006, a process server personally served the summons and complaint upon Hattie Van Weerdhuizen at her home. Service for Gordon Van Weerdhuizen was left with Hattie as well. Perrin was not aware that Gordon had died on March 20, 2006. His attorney did not notice that the process server's declaration of service listed Hattie as "Spouse/Widow."[2]
¶ 6 On August 11, 2006, Perrin received a notice of appearance for Hattie from the law firm of Davis Rothwell Earle & Xóchichua, P.C.
¶ 7 On August 15, 2006, the Van Weerdhuizens' son, Dale, was appointed personal representative of Gordon's estate in a probate opened in Whatcom County. The probate file included Gordon's will, in which Hattie was the first nominee for personal representative.[3] Dale filed a notice to creditors. The date of first publication was September 20, 2006.[4]
¶ 8 On August 30, 2006, Perrin, still unaware of Gordon's death, mailed interrogatories directed to both Hattie and Gordon. Hattie responded on September 28. Right after listing her address and date and place of birth, she wrote "widow as of March 20, 2006." Perrin and his attorney did not notice that answer.[5]
¶ 9 Perrin did not learn of Gordon's death and the appointment of Dale as personal representative until December 20, 2006. On that date, Keith Bode, the attorney representing Dale in the probate, wrote to Perrin saying Dale had been informed Perrin was a potential creditor of the estate "by reason of claims arising from an August 15, 2003, motor vehicle crash." The letter included a copy of the Notice to Creditors and stated that notice of the probate was being provided in order to trigger the applicable bar dates in the probate code that would bar any claim that was not timely presented "and if not already barred by any other applicable statute in limitation of actions."[6] Bode enclosed these documents in a similar letter to Perrin's attorney George Freeman, recognizing him as "apparent counsel for Mr. and Mrs. Perrin in related matters."[7] Perrin promptly filed a claim with the estate. Dale rejected it on January 23, 2007.
¶ 10 On February 1, 2007, Perrin filed an amended summons and complaint substituting Dale, in his capacity as personal representative of the estate, as defendant in place of Gordon. He had Dale personally served two weeks later.
¶ 11 On March 7, 2007, attorney Patrick N. Rothwell filed a notice of appearance for Dale as personal representative of the estate. Rothwell's firm had been representing Hattie *1192 since her appearance in Perrin's suit on August 11, 2006. Also on March 7, Rothwell sent a letter asking Perrin to file a dismissal as to Hattie. He said he had just received notice from the insurance carrier, One Beacon, that Dale as personal representative was covered under Gordon's insurance policy. "Given the fact that there is more than enough insurance coverage, and that this claim is not being defended under a reservation of rights, I ask that you voluntarily dismiss Hattie Van Weerdhuizen." The letter continued, "As we have discussed in the past, there is no reason for her to remain in this case since, if your clients are ultimately successful, any judgment they obtain would be satisfied through the insurance policy without the need to pursue any community property interest."[8] Perrin did not agree to dismiss Hattie at that time.
¶ 12 On April 16, 2007, the estate and Hattie, both represented by Rothwell, moved for dismissal under CR 12(b)(6) on statute of limitations grounds. The trial court heard argument and dismissed Perrin's suit with prejudice, concluding that the amendment naming the estate as a party did not relate back because Perrin was guilty of inexcusable neglect.
¶ 13 Perrin appeals from the dismissal of his claim against the Van Weerdhuizen estate.
¶ 14 As personal representative of the estate, Dale initially framed the issue in the trial court as "whether plaintiff can sue the personal representative of an estate after the statute of limitations on plaintiff's claim has expired."[9] He argued the amended complaint was time barred because the three year statute of limitations expired on August 15, 2006, and Perrin neither filed nor served a complaint naming the estate as a defendant until almost six months after that date. He relied on Young v. Estate of Snell, 134 Wash.2d 267, 948 P.2d 1291 (1997), a case he does not mention in his briefing on appeal. Young holds that the three year statute of limitations for personal injury claims applies to claims brought against the estate of an insured decedent driver. But it does not address the effect of CR 15(c), and so it is irrelevant to the single issue that both parties now agree is before this court: whether the amended complaint substituting the estate for Gordon relates back under CR 15(c) to the date of the original complaint. The parties agree that if it does, the action against the estate is not time barred.

STANDARD OF REVIEW
¶ 15 Under CR 12(c), the motion to dismiss for failure to state a claim was converted to a motion for summary judgment when the trial court considered matters outside the pleadings, including the declaration of Perrin's attorney and attached documents. In reviewing a summary judgment, this court engages in the same inquiry as did the superior court. Where there are no factual disputes, the case is ripe for summary judgment. Craig v. Ludy, 95 Wash.App. 715, 717, 976 P.2d 1248 (1999), review denied, 139 Wash.2d 1016, 994 P.2d 844 (2000).
¶ 16 To dismiss on the basis of the statute of limitations, the trial court had to first conclude that the amended complaint did not relate back because of Perrin's inexcusable neglect. The estate contends we should review this decision for abuse of discretion, citing Caruso v. Local Union No. 690 Int'l Bhd. of Teamsters, 100 Wash.2d 343, 351, 670 P.2d 240 (1983). Caruso, however, simply states the rule that a trial court has discretion in deciding a motion for leave to amend. Some opinions do refer to abuse of discretion as the standard for reviewing a decision under CR 15(c), probably because the issue often arises in connection with a motion for leave to amend. See, e.g., Nepstad v. Beasley, 77 Wash.App. 459, 468, 892 P.2d 110 (1995) (all the requirements of CR 15(c) were satisfied by plaintiff's request for leave to amend; denial of this request did not rest on tenable grounds); Foothills Dev. Co. v. Clark County Bd. of County Comm'rs, 46 Wash.App. 369, 374, 730 P.2d 1369 (1986), review denied, 108 Wash.2d 1004 (1987). A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of *1193 the law. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 339, 858 P.2d 1054 (1993).
¶ 17 More typically, appellate courts do not refer to a determination of relation back as being discretionary with the trial court; rather, the question is whether the requirements of CR 15(c) have been met. See, e.g., Tellinghuisen v. King County Council, 103 Wash.2d 221, 223, 691 P.2d 575 (1984). This was also the approach taken by the United States Supreme Court in a recent decision authoritatively construing Rule 15(c) of the Federal Rules of Civil Procedure: "Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." Krupski v. Costa Crociere S. p. A., ___ U.S. ___, 130 S.Ct. 2485, 2496, 177 L.Ed.2d 48 (2010). In accordance with this approach, we review the CR 15(c) ruling to determine whether the requirements of the rule were satisfied.

CR 15(c)
¶ 18 CR 15(c), "Relation Back of Amendments," provides:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
¶ 19 CR 15(c) is to be liberally construed on the side of allowance of relation back of an amendment that adds or substitutes a new party after the statute of limitations has run, particularly where the opposing party will be put to no disadvantage.[10] Our Supreme Court adopted this guiding principle in DeSantis v. Angelo Merlino & Sons, Inc., 71 Wash.2d 222, 427 P.2d 728 (1967), relying on commentary in Moore's Federal Practice concerning the analogous federal rule. The original personal injury complaint in DeSantis named as defendants Angelo Merlino and his wife, doing business as a proprietorship. The Merlino business was actually a corporation in which Merlino was a vice president and five percent stockholder. Merlino accepted service and notified the corporation and its insurance company of the claim. Merlino filed an answer denying the averments of the complaint, including the averment that the defendant was a proprietorship. This clue apparently went unnoticed by the plaintiff, who entered into extended settlement negotiations. After the statute of limitations ran, Merlino successfully moved to dismiss based on the defect in parties. The Supreme Court reversed, applying the predecessor rule to CR 15(c). Because no prejudice to the substituted party could result from relation back, refusing to allow it "would be to sanction manifest injustice." DeSantis, 71 Wash.2d at 225, 427 P.2d 728.
¶ 20 With the policy of liberal construction in mind, we consider whether the requirements of CR 15(c) have been met in this case.
¶ 21 First, did the claim asserted in the amended pleading arise out of the conduct, transaction, or occurrence set forth in the original pleading? Yes. The estate concedes this element is satisfied. The claim asserted in both the original and the amended complaint arises out of the 2003 car accident and the alleged negligence of Gordon Van Weerdhuizen. The action survives under RCW 4.20.046.
*1194 ¶ 22 Second, within the period provided by law for commencing the action against it, did the party to be brought in by amendment in this case, Gordon's estatereceive such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the merits? The trial court believed this element was satisfied by service on Hattie. "Well, if she was served, I think that goes to whether or not the estate should have known . . . that but for a mistake, they would have been a party. . . . If she's got knowledge that there's a lawsuit, I think that . . . can be imputed to the estate."[11]
¶ 23 The estate, however, contests the notice requirement on the basis that Perrin submitted no evidence that Dale Van Weerdhuizen knew about the lawsuit before August 15, 2006. The estate presumes that the sufficiency of notice to the estate must necessarily be measured by the information provided to the personal representative. This presumption contravenes the liberal policy of construction of CR 15(c). The "estate" as a formal entity and Dale's formal role as its representative did not come into existence until August 15, 2006, exactly three years after the car accident. Yet it is plain that the individuals who would necessarily be concerned with Gordon's estate and the defense of the claim against it were notified of the claim against Gordon before that date. Hattie Van Weerdhuizen was the first nominee for personal representative named in her husband's will. Hattie was timely and personally served on July 24, 2006, with notice of the suit directed both to herself and to Gordon. Presumably, she knew then that Gordon's estate could be liable. Defense counsel appeared on Hattie's behalf on August 11, 2006, still within the statute of limitations. The same counsel later confirmed to Perrin that the applicable insurance policy had more than adequate coverage for the claim; the same counsel later appeared on behalf of the estate seeking to have the claim dismissed.
¶ 24 This court has concluded the notice requirement of CR 15(c) was satisfied in three other similar car accident cases: LaRue v. Harris, 128 Wash.App. 460, 115 P.3d 1077 (2005); Schwartz v. Douglas, 98 Wash. App. 836, 837, 991 P.2d 665, review denied, 141 Wash.2d 1003, 10 P.3d 404 (2000); and Craig, 95 Wash.App. 715, 976 P.2d 1248. Toward the end of the limitations period in each case, the plaintiff commenced the lawsuit by naming the driver as the defendant without being aware the driver was dead, and then moved to amend the complaint by substituting the driver's estate after the limitations period expired. In each case, we concluded the amendment related back under a theory of imputed notice. As noted in Craig, federal courts have held timely notice may be imputed to a defendant added in an amended complaint if there is a community of interest between the originally named defendant and the party to be added, as with insurance carriers and the estates of their insureds. See Craig, 95 Wash.App. at 719-20, 976 P.2d 1248. Schwartz is in accord: "Counsel retained by the insurer would have been required to defend this suit whether for Mr. Douglas or for his estate after he died. Due to this community of interest, the notice to the insurer is imputed to the estate." Schwartz, 98 Wash.App. at 840, 991 P.2d 665 (citations omitted). In LaRue, we similarly concluded that where the defendant's insurer had notice of the lawsuit within the three year limitations period, the insurer's notice and knowledge "were imputable to the Estate." LaRue, 128 Wash.App. at 465, 115 P.3d 1077.
¶ 25 This case is like Craig, Schwartz, and LaRue. Because of the community of interest between Hattie, her husband's estate, and the insurer who provided the Van Weerdhuizens with coverage for the claim, we conclude timely notice to Hattie was sufficient notice to the estate under CR 15(c) so that the estate will not be prejudiced in defending the action.
¶ 26 Third, within the period provided by law for commencing the action against it, did the estate know, or should it have known, that the action would have been brought against it but for a mistake concerning the identity of the proper party? Yes. The mistake was obvious. As soon as Hattie was served with timely notice that is imputed to *1195 the estate, there could be no doubt that the estate would have been the named defendant but for Perrin's mistake in believing, when he commenced the action, that Gordon was still alive.

EXCUSABLE NEGLECT
¶ 27 In summary, the requirements for relation back explicitly mentioned in CR 15(c) were satisfied. Where the requirements of the rule are satisfied, amending the complaint to add a new party "does not subvert the policies of the statute of limitations," according to the leading case of North Street Ass'n v. City of Olympia, 96 Wash.2d 359, 368, 635 P.2d 721 (1981), disapproved on other grounds by Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 815 P.2d 781 (1991).
¶ 28 North Street additionally states that new parties cannot be added if the plaintiff's delay is due to "inexcusable neglect":
The amended rule, however, still does not permit joinder if the plaintiff's delay is due to inexcusable neglect. Upshaw v. Equitable Life Assurance Soc'y of United States, 85 F.R.D. 674 (E.D.Ark.1980); Morse v. Michaelson, Rabig & Ramp, 101 Ill.App.2d 366, 243 N.E.2d 271 (1968); Moore, at 15-231. In both North Street Association and G-3 Properties, the applicants were at all times aware of the necessary parties and yet still failed originally to name them. From the record, no reason for the omission appears. The omission therefore must be characterized as inexcusable neglect and, consequently, CR 15(c) was inapplicable to these cases. The Court of Appeals in G-3 Properties, for having concluded otherwise, is reversed.
North Street, 96 Wash.2d at 368-369, 635 P.2d 721. This excerpt from North Street has been understood as imposing a fourth and independent prerequisite for relation back. See, e.g., Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 173, 744 P.2d 1032 (1987) ("Thus, a court must determine whether the requirements of CR 15(c) are met and the court must determine whether failure to join the plaintiffs earlier was the result of inexcusable neglect."); Coastal Bldg. Corp. v. City of Seattle, 65 Wash.App. 1, 6 n. 6, 828 P.2d 7 (referring to "CR 15(c), with its judicially superimposed inexcusable neglect exception to `relation back'"), review denied, 119 Wash.2d 1024, 838 P.2d 690 (1992).
¶ 29 The estate maintains that Perrin was guilty of inexcusable neglect for failing to notice the process server's designation of Hatties as "Spouse/Widow" on the return of service in July 2006 and for failing to notice Hattie's interrogatory response for the next month, "widow as of March 20, 2006." In the estate's view, Perrin should have realized Gordon was dead and should have immediately taken the steps necessary to have a personal representative appointed so that he could sue the estate before the statute of limitations expired. The trial court took a somewhat more forgiving stance and reasoned that if the Perrins had sought amendment of the complaint immediately upon learning that Dale had been appointed personal representative, "I think they would have been in good faith then. It would have been excusable neglect . . . but they waited until February."[12]
¶ 30 The requirement of "excusable neglect" does not appear in the text of CR 15(c) or in the parallel federal rule, Fed.R.Civ.P. 15(c). Upshaw, the federal district court case cited by our Supreme Court in North Street, did not treat the plaintiff's lack of diligence as a fourth prerequisite of relation back. Rather, the plaintiff's delay in adding the new defendant was seen as relevant to the notice requirement of Rule 15(c), which is "one part of the three-fold showing." Upshaw, 85 F.R.D. at 678. Nevertheless, inexcusable neglect has become firmly embedded in Washington case law as a fourth ground for denying relation back. In this respect, Washington case law diverges from the analogous federal rule as articulated in Krupski. Krupski holds, consistent with Upshaw, that Rule 15(c) has only three prerequisites for relation back. "The Rule plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them." Krupski, 130 S.Ct. at 2496.
*1196 ¶ 31 In Krupski, the plaintiff was injured on a cruise ship. The carrier and correct defendant was an entity named Costa Crociere. Plaintiff Krupski sued an entity named Costa Cruise, based on confusing representations on the passenger ticket. Costa Cruise was in fact only the sales and marketing agent of the carrier. Shortly after the limitations period expired, Costa Cruise informed the plaintiff of the existence of Costa Crociere. Krupski waited 133 days to seek leave to amend. She then waited another month to file an amended complaint naming Costa Crociere as a defendant. The district court denied relation back, and Costa Crociere successfully moved for dismissal. The Eleventh Circuit affirmed.
¶ 32 The Supreme Court reversed. The Court of Appeals "chose the wrong starting point" when it decided that Krupski knew or should have known of the proper party's identity. Krupski, 130 S.Ct. at 2493. The central question, rather, was "whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." Krupski, 130 S.Ct. at 2493. And the Court of Appeals further erred in "its view that a plaintiff's dilatory conduct can justify the denial of relation back":
We have previously explained that a court may consider a movant's "undue delay" or "dilatory motive" in deciding whether to grant leave to amend under Rule 15(a). Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As the contrast between Rule 15(a) and Rule 15(c) makes clear, however, the speed with which a plaintiff moves to amend her complaint or files an amended complaint after obtaining leave to do so has no bearing on whether the amended complaint relates back. Cf. 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1498, pp. 142-143, and nn. 49-50 (2d ed. 1990 and Supp. 2010).
Krupski, 130 S.Ct. at 2496.
¶ 33 As Krupski explains, the purpose of relation back is to balance the interest of the defendant protected by the statute of limitations with the preference embodied in the civil rules for resolving disputes on their merits. "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." Krupski, 130 S.Ct. at 2494.
¶ 34 For the Van Weerdhuizen estate, repose would be a windfall. Because the three express requirements of CR 15(c) were satisfied, it should be immaterial that Perrin waited until near the end of the limitations period to commence the action; that he failed to notice the return of service and the interrogatories advising him that Hattie Van Weerdhuizen was a widow; and that after receiving a letter advising him of the death of Gordon Van Weerdhuizen, he waited two more months before seeking to amend the complaint. The only question should be whether it is right to impute to the estate the knowledge that but for Perrin's mistaken assumption that Gordon was still alive, the lawsuit would have been brought against the estate. As discussed above, we conclude that it is right to do so, and under Krupski that would be the end of the analysis.
¶ 35 Where a state rule parallels a federal rule, analysis of the federal rule may be looked to for guidance, though such analysis will be followed only if the reasoning is found to be persuasive. Beal for Martinez v. City of Seattle, 134 Wash.2d 769, 777, 954 P.2d 237 (1998). While we find the analysis by the United States Supreme Court in Krupski to be highly persuasive, we cannot modify North Street. Only our Supreme Court can decide that the "inexcusable neglect" factor should lose its place as an independent basis for denying relation back under CR 15(c).
¶ 36 Perrin contends that the requirement of excusable neglect in Washington's case law applies only in those cases where the plaintiff seeks to join a new and previously unidentified defendant, not in cases where the plaintiff merely seeks to substitute one defendant for another because of a mistake in identity or capacity. It is true that there has been some chipping away at excusable neglect in cases involving substitution of a different *1197 plaintiff. See Miller v. Campbell, 164 Wash.2d 529, 192 P.3d 352 (2008) (no showing of excusable neglect required in order for substitution of bankruptcy trustee for debtor); Beal, 134 Wash.2d 769, 954 P.2d 237 (no showing of excusable neglect required to achieve relation back of an amendment changing the representative capacity of a plaintiff from guardian ad litem of surviving children to personal representative of decedent's estate, as necessary to bring wrongful death action). But the holdings in these cases were narrowly stated, and it is up to the Supreme Court to decide whether to expand them to include cases substituting one defendant for another, or perhaps to follow Krupski in holding that the rule means exactly what it says.
¶ 37 As the law presently stands, "inexcusable neglect" under CR 15(c) should not be confused with "inexcusable neglect" as that term is used in deciding a motion to vacate a default judgment. See White v. Holm, 73 Wash.2d 348, 351-55, 438 P.2d 581 (1968). That sort of confusion may be what produced the result in this case. As we observed earlier in this opinion, our Supreme Court has not treated relation back under CR 15(c) as a matter left to the trial court's equitable discretion. In North Street and similar cases involving the belated joinder of a defendant with a property interest in a zoning matter, the issue was not whether the plaintiff was sufficiently diligent in correcting an initial mistake. Failing to name property owners when their identities are known or easily ascertainable is likely to be a strategic choice rather than a mistake. Veradale Valley Citizens' Planning Comm. v. Bd. of County Comm'rs of Spokane County, 22 Wash.App. 229, 238, 588 P.2d 750 (1978). We believe the reasoning in Veradale Valley explains why the Supreme Court has said that generally, "inexcusable neglect exists when no reason for the initial failure to name the party appears in the record." South Hollywood Hills Citizens Ass'n v. King County, 101 Wash.2d 68, 78, 677 P.2d 114 (1984). So in North Street, writ applicant G-3 Properties, Inc. was at all times aware of the property owners and their interest in the matter, yet inexplicably failed to name them. North Street, 96 Wash.2d at 362, 368-69, 635 P.2d 721. Even though they were aware of the action directed to the Board of County Commissioners, the owners had no reason to believe they had been omitted from the action due to a mistake concerning the identity of the proper party. In the words of Krupski, they had "a strong interest in repose" once the deadline passed. Krupski, 130 S.Ct. at 2494. The Krupski analysis can thus be reconciled not only with North Street but also with Tellinghuisen, 103 Wash.2d at 224, 691 P.2d 575; South Hollywood Hills, 101 Wash.2d at 78, 677 P.2d 114; and Coastal Bldg. Corp., 65 Wash.App. at 6, 828 P.2d 7.
¶ 38 In the present case, however, there was no reason to believe Perrin made a strategic choice to avoid naming the estate; no concern about adequate notice to the estate; and no identified prejudice to the estate. The trial court erroneously interpreted the case law as calling for an exercise of equitable discretion to evaluate whether Perrin moved quickly enough to correct his mistake about the identity of the proper defendant. This view is inconsistent with liberal construction of the rule. Unlike in North Street, Tellinghuisen, and South Hollywood Hills, here the record provides a satisfactory reason why Perrin initially failed to name the estate as a party: he did not know Gordon Van Weerdhuizen was dead.
¶ 39 In summary, we conclude the requirements of CR 15(c) were met and Perrin's delays did not amount to inexcusable neglect. Relation back under these circumstances is required. The action is not time barred.
¶ 40 Reversed.
WE CONCUR: LAU and APPELWICK, JJ.
NOTES
[1] The Stenslands are no longer parties to the case.
[2] Clerk's Papers at 29-30 (Declaration of George T. Freeman); Report of Proceedings at 24.
[3] Report of Proceedings at 11-12.
[4] Clerk's Papers at 39.
[5] Clerk's Papers at 30, 34, 36.
[6] Clerk's Papers at 40.
[7] Clerk's Papers at 38.
[8] Clerk's Papers at 48.
[9] Clerk's Papers at 61.
[10] The rule is not limited to cases where a plaintiff files an amended complaint seeking to bring in a new defendant, but this is the typical circumstance that creates controversy. See Krupski, 130 S.Ct. at 2493 n. 3. Washington courts likewise apply CR 15(c) to permit relation back when there is substitution of a new party for the original plaintiff. See, e.g., Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 172-73, 744 P.2d 1032, 750 P.2d 254 (1987).
[11] Report of Proceedings at 20.
[12] Report of Proceedings at 26.